UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No.: 1:21-CR-234-CJN |
| : | |
| JOSEPH WAYNE FISCHER, : | |
| Defendant : | |

**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO CLARIFY AND MODIFY CONDITIONS OF RELEASE**

**I.      Procedural History**

On November 2, 2021, Mr. Fischer filed a Motion to Clarify and Modify Conditions of Release.  *See* (Doc. 47).  Mr. Fischer requested:  1) that he be permitted to attend his family hunting camp; and 2) that he be permitted to use a muzzleloader or bow.  *Id*.  On November 5, 2021, the government filed its response.  *See* (Doc. 49).  At issue is release condition 7(k), that he not possess a firearm, destructive device, or other weapon.  Defendant, in this reply, is only addressing the government's argument that he not be permitted to attend hunting camp.

## II.     Counter Statement of the Facts

The government contends that at approximately 3:34 p.m. on January 6, 2021, Mr. Fischer yelled charge, he then pushed forward through the crowd into the Capitol, that he "galloped" forward toward a group of police yelling 'motherfuckers,' that he made contact with the police, fell to the ground, got up and talked to the officers telling them he was a cop, that he pressed up against one officer's riot shield, that he ended up behind the police line before being pushed back behind the line and out the door, and all in the span of less than four minutes. *See* (Doc. 49, pgs, 2-3).  The government claims that Mr. Fischer "aggressively charged into the Capitol, running straight at a police line." *Id*. at 7.  The government goes on to point out that Mr. Fischer was "wearing a ballistic vest underneath a red coat," but then wisely concedes that he was not wearing any ballistic vest when he allegedly "charged" into the Capitol. *Id*. at 3.

Counsel asked the government for the names of the officers Mr. Fischer interacted with.  Most could not remember the specifics of the interaction with Mr. Fischer.  One officer said that "he remembered a lot of pushing from the subject and that the subject identified himself as a police officer."  According to this officer, Mr. Fischer said, 'You need to take a knee,' and 'come join the other side.'  One officer recalled Mr. Fischer "pushing past him," but he could not remember what he said.

Before and after January 6, 2021, the government cites every related post on his phone. The government goes on to exaggerate his interaction with the police when they arrested him early in the morning after he had just worked the late shift. *Id*. at 2-4.

The government complains that it is the combination of all of this conduct that warrants a new condition, *ie*, that he not be permitted to be around others who possess firearms. Significantly, in asking this Court to enlarge the conditions of release, the government cannot point to a single new social media post/fact since Mr. Fischer was released with conditions. Rather than explain how it is a violation of condition 7(k) to be at hunting camp, the government interjects its subjective feelings about the dangers that may lurk for Mr. Fischer at the hunting camp:

> The government is concerned about his participation in the hunting trip. There will be firearms all around him, being handled by friendly family members, and defendant will be unmonitored. The temptation to possess weapons, either actively or constructively, may simply be too great. Any time someone puts a weapon down near the defendant, there could be a potential violation." *Id*. at 8. …The government claims that it has not been presented with a workable plan to ensure compliance…and the [t]he current proposal requires placing an enormous amount of trust in the defendant to restrain himself."[1] *Id*. at 8-9.

---

[1] Counsel had informed the government by email dated October 28, 2021, that at the hunting camp, they have built in lockers for the firearms and 2 portable lockers. Each person is responsible for their own firearm.

3

Contrary to the government's statement of facts, on January 6, 2021, Mr. Fischer attended the Trump rally and left D.C. when it concluded. He was on his way back home when he heard there was a commotion at the Capitol. He drove back into D.C., well after the Capitol was breached, gates were down, and Senators and Representatives were evacuated. He was in the Capitol for less than 4 minutes. He entered with his phone up in the air to take pictures. While he did yell "charge," he did not push forward, "gallop" forward, or "aggressively charge" into the Capitol. In fact, videos show that no one in the crowd even reacted and the pace stayed the same as everyone was entering. Police officers were standing at the door and allowing the protestors to enter. He entered with a crowd, and it was the sheer weight of the crowd that caused him to fall and when he got up, it was the sheer weight of the crowd that was pushing him into the officer. When Mr. Fischer fell, he picked up an officer's set of handcuffs and handed them back to the officer. He interacted with the police, got pepper sprayed and the officers guided him out the door.

### III.  Argument

Both the government and the defendant agree on one matter, Mr. Fischer must be subject to the "least restrictive condition, or combination of conditions" that the judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community. *See*

(Doc. 49, pg. 6; *see also* 18 U.S.C. § 3142(c)(1)(B)).   The condition at issue, 7(k), that he not possess a firearm, destructive device, or other weapon is clear on its face - that *he* not possess a firearm.  The plain language of the condition is unavoidable.  It is not vague or unclear.  The government wants to add a new condition or somehow read into this condition that he is not permitted to be around others who possess firearms.[2]

The condition is clear, it is the least restrictive, and the government is simply trying to add a new condition of release without any new evidence of anything that has changed since he was placed on these conditions.

---

[2] The government is subjectively concerned that "he cannot be monitored" and that the temptation would be too much."  This argument is specious.  Pretrial Services does not monitor him at home or any place where he might visit.  He calls in once a week.  He could be around firearms any time he wanted to if he wanted to be in violation, but he chooses not to.  The government claims that the current proposal requires placing "an enormous amount of trust in [Mr. Fischer] to restrain himself."  *See* (Doc. 49, pg. 9).   The government puts an enormous amount of trust in any defendant on pretrial release.  And, Mr. Fischer has not disappointed that trust.

## IV. Conclusion

Mr. Fischer is asking this Court to clarify that he can attend hunting camp and that mere presence at the camp cannot be a violation of his conditions of release.

Respectfully submitted,

Date: November 8, 2021

/s/ Lori J. Ulrich
LORI J. ULRICH, ESQUIRE
Trial Chief
Asst. Federal Public Defender
Attorney ID PA55626
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-2237
Fax No. (717) 782-3881
lori_ulrich@fd.org

Eugene Ohm, Esquire
Federal Public Defender
625 Indiana Ave, NW
Suite 550
Washington D.C. 20004
Tel. No. (202) 208-7500
Fax No. (202) 501-3829
eugene_ohm@fd.org
*Attorney for Joseph Wayne Fischer*