IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | 1:21-CR-234-CJN |
| | : | |
| v. | : | |
| | : | |
| **JOSEPH W. FISCHER** | : | |

## MOTION TO TRANSFER VENUE AND
## MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW, the defendant, Joseph W. Fischer, by and through his attorneys, pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure, and respectfully moves this Honorable Court for a transfer of venue so that he may be tried by an impartial jury as guaranteed by the Fifth and Sixth Amendments to the United States Constitution. Mr. Fischer submits that detrimental pretrial publicity and community prejudice in the District of Columbia are so likely to have affected the jury pool that the venire must be presumed to be tainted. Mr. Fischer proposes that this matter be moved to the Middle District of Pennsylvania, where he resides and was arrested and where witnesses for the defense are located.

Further, while venue should be changed, in either instance, Mr. Fischer submits that the trial court must employ a jury questionnaire as a necessary precaution to screen out bias in the jury pool.

1

## I. BACKGROUND

The instant case arises out of the events at the United States Capitol on January 6, 2021. As a result of the events that unfolded on that day, hundreds of individuals have been charged with federal felonies and misdemeanors in the District of Columbia. Mr. Fischer is charged in a superseding indictment with civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count 1); assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. §§ 111(a)(1) and 2 (Count 2); obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count 3); entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count 4); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count 5); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count 6); and parading, demonstrating or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count 7). (Doc. 52, Superseding Indictment).

## II. LEGAL STANDARD

The Fifth and Sixth Amendment of the United States Constitution entitle criminal defendants to a fair trial by an impartial jury. "The great value of the trial by jury certainly consists in its fairness and impartiality." *United States v. Burr,* 25 F. Cas. 49, 51 (CC Va. 1807). The right to an impartial jury is a cornerstone of due process. *In re Murchison*, 349 U.S. 133, 136 (1955). Federal Rule of Criminal

Procedure 21(a) instructs that district courts "must transfer the proceeding . . . if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."[1]

The factors courts consider in determining whether to grant a change of venue request are (1) the size and characteristics of the community; (2) the nature and extent of pretrial publicity; (3) the proximity between the publicity and the trial; and (4) evidence of juror partiality. *See Skilling*, 561 U.S. 358, 378-81 (2010). While the *Skilling* factors likely apply to the instant matter,[2] in some cases, a potential jury pool can be presumed to be irredeemably biased, when the alleged crime results in "effects . . . on [a] community [that] are so profound and pervasive that no detailed discussion of the [pretrial publicity and juror partiality] evidence is necessary." *United States v. McVeigh*, 918 F. Supp. 1467, 1470 (W.D. Okla. 1996) (transferring the trial of the Oklahoma City bombing suspects from Oklahoma City to the District of Colorado).

---

[1] While the Sixth Amendment provides a right to trial by jury of the state where the crime shall have been committed, the Constitution's place-of-trial prescriptions do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial. *See Skilling v. United States*, 561 U.S. 358, 378 (2010).

[2] Prior to *Skilling*, courts in the District of Columbia Circuit employed an "extreme circumstances" standard for change of venue. *See United States v. Edmond*, 52 F.3d 1080, 1099 (D.C. Cir. 1995). *Skilling* now directs courts to analyze the four aforementioned factors to determine the presumption of prejudice, rather than an utilizing an "extreme circumstances" standard.

### III.   ARGUMENT

If Mr. Fischer proceeds to trial in Washington, D.C., the jury pool in his case would be comprised of those who voted nearly unanimously against Donald Trump and have been barraged with propaganda about a "white nationalist" attack and an "insurrection" at the Capitol.  The daily lives of members of the potential jury pool were disrupted in the days, weeks, and months following January 6th, since travel and transportation were severely limited and disrupted in that section of Washington.  The unavoidable community prejudice renders the venire so greatly prejudiced against him that Mr. Fischer cannot obtain a fair and impartial trial in Washington, D.C.

Review of the *Skilling* factors weigh in favor of transferring Mr. Fischer's case to the Middle District of Pennsylvania.

#### 1.   Size and Characteristics of the Community[3]

Washington D.C. is a relatively small community, with a population of about 700,000 and an estimated potential jury pool of less than 500,000.[4] Approximately 93% of voters in Washington voted against Donald Trump,

---

[3] The Federal Public Defender's Office for the District of Columbia has recently engaged the services of an expert to conduct a study into the potential bias of the District of Columbia's jury pool.  Mr. Fischer reserves the right to supplement this filing with facts and statistics gleaned from that study upon its completion.

[4] *See District of Columbia,* The Urban Institute (September 2021), https://www.urban.org/policy-centers/cross-center-initiatives/state-and-local-finance-initiative/projects/state-fiscal-briefs/washington-dc (last visited Jan. 11, 2022).

rendering it the least diverse political population in the country.[5] The antipathy towards Donald Trump and his supporters in the District is obvious.

Since Donald Trump was elected President in 2016, large numbers of District of Columbia residents have engaged in both peaceful and violent protests targeted at Trump and his supporters. Inauguration Day 2016 saw violent protests in the District, with anti-Trump protestors destroying businesses, cars, and other property, and attacking Trump supporters.[6] Hardly a week went by during Trump's presidency without an anti-Trump protest outside the White House, Congress, the Trump Hotel, at local universities and other District locales.

That the potential jury pool in the District of Columbia is prejudiced against supporters of Donald Trump generally and the January 6th protestors specifically is a given.

### 2. Nature and Extent of Pretrial Publicity

Mr. Fischer's case is tied to an event that was so impactful on the psyche of District residents that it is *per se* impossible for local jurors to reach a fair and impartial verdict. District residents have been bombarded with wall-to-wall coverage of the January 6th events, related arrests, criminal charges and, more recently, prosecutorial outcomes. The National Guard was deployed to

---

[5] *See Election results: The 2020 presidential race,* Politico.com (2021); https://www.politico.com/2020-election/results/president (last visited Jan. 11, 2022).

[6] *Violence flares in Washington during Trump inauguration,* Reuters, https://www.reuters.com/article/us-usa-trump-inauguration-protests-idUSKBN1540J7 (last visited Jan. 11, 2022).

Washington D.C. for more than 4 months after the incident.[7] The Mayor of D.C. declared a state of emergency and implemented a 6 p.m. curfew for weeks.[8] The District implemented significant closures of roads and public spaces in advance of President Biden's inauguration, in direct response to the violence at the Capitol on January 6th.[9] The Department of Homeland Security declared that government offices were potential targets of violent domestic extremists, who were emboldened by the "recent mob assault" on the Capitol.[10] Every potential juror in the District was impacted by the events on Capitol Hill on January 6th.

  Our nation's leaders cast aspersions on individuals like Mr. Fischer. On January 26th, while speaking in Washington, D.C., President Biden referred to Trump supporters involved in the January 6th incident as "a group of thugs, insurrectionists, political extremists, and white supremacists."[11] While on the

---

[7] *See National Guard troops leave US Capitol more than 4 months after January 6th riot,* FOX5 Washington DC, https://www.fox5dc.com/news/national-guard-troops-leave-us-capitol-more-than-4-months-after-january-6th-riot (last visited Jan. 11, 2022).

[8] Press Release, Mayor Muriel Bowser, January 6, 2021, https://mayor.dc.gov/release/mayor-bowser-issues-mayor's-order-extending-today's-public-emergency-15-days-a1 (last visited Jan. 11, 2022).

[9] *DC Inauguration Updates: 4 Bridges Between DC, Virginia Closing; National Mall Closed*; NBC4 Washington, https://www.nbcwashington.com/news/local/dc-inauguration-updates-friday-closures-threats-national-mall/2542719/ (last visited Jan. 11, 2022).

[10] *DHS Warns of Heightened Threats from Violent Domestic Extremists,* NPR, https://www.npr.org/2021/01/28/961470061/dhs-warns-of-heightened-threats-from-violent-domestic-extremists (last visited Jan. 11, 2022).

[11] Remarks by President Biden at Signing of an Executive Order on Racial Equity, The White House (2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/01/26/remarks-by-president-biden-at-signing-of-an-executive-order-on-racial-equity (last visited Jan. 11, 2022).

House floor in Washington, D.C., Representative Cori Bush called the January 6th incident "a white supremacist insurrection" and a "domestic terror attack."[12] Indeed, within the first week of the incident 73% of Democrat leaders in Washington referred to the January 6th event as an "insurrection."[13] Democrat lawmakers' social media engagement skyrocketed after January 6th as they began heavily discussing the incident.[14]  By February, it became second nature for Democrats to describe the incident as an "insurrection" and refer to Trump supporters as "white supremacists."  When sworn before the Senate Judiciary Committee on February 22, 2021, Attorney General Merrick Garland described the January 6th incident as "a heinous attack that sought to disrupt a cornerstone of our democracy" and described the individuals involved as "white supremacists . . . who stormed the Capitol."[15]

---

[12] *Rep. Cori Bush Calls Trump 'White Supremacists-in-Chief'*, NBC4 Washington, https://www.nbcwashington.com/news/national-international/rep-cori-bush-calls-trump-white-supremacist-in-chief/2540892 (last visited Jan. 11, 2022).

[13] *Lawmakers of each party used distinct language on social media in days following Jan. 6 rioting at U.S. Capitol,* Pew Research Center (2021), https://www.pewresearch.org/fact-tank/2021/01/15/how-lawmakers-social-media-activity-changed-in-the-days-after-the-u-s-capitol-riot/ft_2021-01-15_socialmediacongress_01/ (last visited Jan. 11, 2022).

[14] *Audience engagement with posts from Democratic lawmakers increased after Jan. 6 rioting at U.S. Capitol,* Pew Research Center (2021), https://www.pewresearch.org/fact-tank/2021/01/15/how-lawmakers-social-media-activity-changed-in-the-days-after-the-u-s-capitol-riot/ft_2021-01-15_socialmediacongress_02 (last visited Jan. 11, 2022).

[15] Hearing before the U.S. Senate Committee on the Judiciary, Merrick Brian Garland (Nominee for Attorney General), February 22, 2021 (2021), https://judiciary.senate.gov/imo/media/doc/SJC%20Testimony.final.pdf (last visited Jan. 11, 2022).

Local Washington D.C. news was filled with coverage of the January 6th events and resulting aftermath, replete with references to "insurrectionists," "white supremacists" and even suggestions of a "race war."[16] Former President Trump has been referred to as the "leader" of these "white supremacists" and was placed on trial for "inciting an insurrection."[17] Nancy Pelosi went so far as to declare that Donald Trump was an accessory to murder.[18]

Most recently, our nation observed the one-year anniversary of the January 6th events. President Biden marked the occasion by delivering a speech from Statutory Hall in the Capitol. He referred to January 6th as an "armed insurrection" and said that individuals like Mr. Fischer "were looking to subvert the constitution."[19]

---

[16] *Analysis: A race war evident long before the Capitol siege,* WTOP, https://wtop.com/national/2021/02/analysis-a-race-war-evident-long-before-the-capitol-siege-2/ (last visited Nov. 22, 2021); *Dozens charged in Capitol Riots Spewed Extremist Rhetoric*, NBC4 Washington (2021), https://www.nbcwashington.com/news/national-international/dozens-charged-in-capitol-riots-spewed-extremist-rhetoric/2575102/ (last visited Nov. 22, 2021); *Trump Legacy on Race Shadowed by Divisive Rhetoric, Actions,* NBC4 Washington (2021), https://www.nbcwashington.com/news/politics/trump-legacy-on-race-shadowed-by-divisive-rhetoric-actions/2536591 (last visited Nov. 22, 2021).

[17] *Insurrection? Sedition? Unpacking the Legal Issues from the Capitol Riot,* The Washington Post (2021), https://www.washingtonpost.com/business/insurrection-seditionunpacking-the-legal-issues-from-the-capitol-riot/2021/01/14/4fe1f618-5631-11eb-acc5-92d2819a1ccb_story.html (last visited Nov. 22, 2021).

[18] *Nancy Pelosi on the Capitol Hill insurrection: Trump was an accessory to the crime of murder*, MSNBC.com (2021), https://www.msnbc.com/msnbc/watch/nancy-pelosi-on-the-capitol-hill-insurrection-trump-was-an-accessory-to-the-crime-of-murder-99705925960 (last visited Nov. 22, 2021).

[19] *READ: Full Transcript of Joe Biden's Speech on the Jan. 6 Insurrection*, U.S. News (2022), https://www.usnews.com/news/politics/articles/2022-01-06/read-full-transcript-of-joe-bidens-speech-on-the-jan-6-insurrection (last visited Jan. 11, 2022).

Considering the media's focus on the events of January 6th, the political response to the Capitol incident, and the relentless media coverage of political statements made about the Capitol defendants, there is little doubt that the District of Columbia is a hostile jurisdiction for the trial of Mr. Fischer.

### 3. The Proximity of Publicity to Trial

The events and aftermath of January 6th continue to be reported on a daily basis in the news. The one-year anniversary of the event as well as recent sentencings of high-profile January 6th defendants have foisted the matter back into the national and local discourse.[20] Indeed, there are almost daily stories about the Congressional investigation into the events of January 6th, revealing new details and the failure of many people who have been subpoenaed by the Congressional committee to cooperate. Mr. Fischer desires to go to trial as soon as possible on the charges against him. Once Mr. Fischer's pre-trial motions have been ruled upon, he anticipates requesting a trial date from the Court.[21]

---

[20] *QAnon Shaman Jacob Chansley gets 41 months in prison for role in Jan. 6 riot,* NBC4 Washington (2021), https://www.nbcwashington.com/news/national-international/qanon-shaman-jacob-chansley-gets-41-months-in-prison-for-role-in-jan-6-riot/2885734/ (last visited Jan. 11, 2021).

[21] As the Honorable Court is well aware, the District Court of the District of Columbia is still operating under extremely restrictive COVID-19 protocols, which have slowed the pace of jury trials in the District. However, the District Court of Middle District of Pennsylvania has returned to business-as-usual, and, at present, multiple jury trials are being held simultaneously in both the Harrisburg and Scranton vicinages. Thus, if this matter is transferred to the Middle District of Pennsylvania, it is anticipated that trial would be scheduled to commence earlier than it would be scheduled in the District of Columbia.

### 4.     Evidence of Juror Partiality

*Skilling* emphasized "the kind of vivid, unforgettable information the Court has recognized as particularly likely to produce prejudice," when considering the factor of jury partiality. *Skilling*, 561 U.S. at 383. The Capitol incident itself was vivid and unforgettable. Of course, the media's constant replay of the imagery has made certain that no one can forget it.

But for residents of the District of Columbia, the imagery does not start and end with the events of January 6th. Rather, Washington D.C. was essentially closed throughout the month of January 2021, with onerous restrictions on residents' movement due to road closures and barricades. The presence of the National Guard, and military fencing, served as a daily reminder to Washington D.C. residents of the Capitol incident.

Moreover, given that approximately 95% of the voters in D.C. voted against Donald Trump, it is hard to imagine how the jury pool could be anything but partial. Democratic political leaders, including the President, control the political narrative and are sending a message to all prospective jurors that defendants like Mr. Fischer are "insurrectionists" and "white supremacists." They are signaling that anything but a guilty verdict would be unacceptable. However, the facts of this case require the jury to be entirely unbiased, during a time of exceptional political divide in this country.

### 5. Alternate Venue

Given all of the foregoing, Mr. Fischer cannot obtain a trial by an impartial jury in the District of Columbia. Mr. Fischer submits that the Middle District of Pennsylvania, Harrisburg vicinage, would be an appropriate alternate venue. Mr. Fischer is a resident of the Middle District of Pennsylvania, and witnesses for the defense reside there as well. Further, Harrisburg and Washington D.C. are a little over 100 miles apart, and can easily be traversed by car or train, thus the forum is not overly inconvenient for government counsel or witnesses.

While pretrial publicity of the Capitol incident was also prevalent in the Middle District of Pennsylvania, it did not compare to the level of politicized publicity experienced in Washington D.C., nor was the community prejudiced by street closures, a curfew, or National Guard presence. By contrast, Harrisburg residents have not been warned that domestic terrorists are threatening their hometown, nor is it overrun by D.C. politics. The parties are significantly more likely to find an unbiased jury panel in a community like Harrisburg where the media exposure has been more limited.

### 6. Juror Questionnaire

Mr. Fischer submits that in either venue, the trial court must utilize a comprehensive juror questionnaire as a means to screen out jurors with bias from the jury pool. Mr. Fischer requests that he be permitted to submit a sample questionnaire for the trial Court's consideration at a time more proximate to trial.

## III. CONCLUSION

Based on the foregoing, Mr. Fischer has demonstrated that he faces significant prejudice in the District of Columbia, prohibitive of a fair and impartial jury as guaranteed by the Fifth and Sixth Amendments to the United States Constitution. Accordingly, Mr. Fischer requests that this Honorable Court transfer this matter to the United States District Court for the Middle District of Pennsylvania, Harrisburg Division, pursuant to Fed. R. Crim. P. 21(a). Mr. Fischer further requests that the trial court employ an extensive and searching juror questionnaire to ensure an impartial jury.

Date: January 12, 2022                                Respectfully submitted:

*/s/ Lori J. Ulrich*
LORI J. ULRICH, ESQUIRE
Assistant Federal Public Defender
*/s/ Amanda R. Gaynor*
AMANDA R. GAYNOR, ESQUIRE
Staff Attorney
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-2237
Fax No. (717) 782-3881
*lori_ulrich@fd.org*
*amanda_gaynor@fd.org*

*/s/ Eugene Ohm*
EUGENE OHM, ESQUIRE
Assistant Federal Public Defender
625 Indiana Avenue, NW
Washington, D.C. 20004
Tel. No. (202) 208-7500
*eugene_ohm@fd.org*

*Attorneys for Joseph W. Fischer*

## CERTIFICATE OF SERVICE

I, Lori J. Ulrich, Esquire, of the Federal Public Defender's Office, do hereby certify that I served a copy of the foregoing **Motion to Transfer Venue and Memorandum of Law in Support Thereof** via Electronic Case Filing, and/or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, and/or by hand delivery, addressed to the following:

Alexis Jane Loeb, Esquire
Assistant United States Attorney
a*lexis_loeb@usdoj.gov*

JOSEPH W. FISCHER

| | |
|---|---|
| Date:  January 12, 2022 | */s/ Lori J. Ulrich* <br> LORI J. ULRICH, ESQUIRE <br> Assistant Federal Public Defender <br> Attorney ID #55626 <br> 100 Chestnut Street, Suite 306 <br> Harrisburg, PA 17101 <br> Tel. No. (717) 782-2237 <br> Fax No. (717) 782-3881 <br> lori_ulrich@fd.org <br> *Attorney for Joseph W. Fischer* |