## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-234-CJN** |
| | : | |
| **JOSEPH W. FISCHER,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS <u>ONE, THREE, FOUR, AND FIVE OF THE SUPERSEDING INDICTMENT</u>

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ......................................................................................... iii

**INTRODUCTION** ..................................................................................................... 1

**FACTUAL BACKGROUND** ...................................................................................... 1

**PROCEDURAL HISTORY** ...................................................................................... 2

**ARGUMENT** ........................................................................................................... 2

I.   Legal Standard ................................................................................................... 3

II.   Fischer's Motion to Dismiss Count One, Alleging a Violation of 18 U.S.C. § 231, Fails .. 3

   A.   Vagueness and overbreadth doctrines ........................................................ 4

   B.   Section 231 is not void for vagueness ........................................................ 6

   C.   Section 231(a)(3) is not unconstitutionally overbroad ................................ 11

III.  The Court Should Deny Fischer's Motion to Dismiss Count Three (Obstruction of an Official Proceeding, in Violation of 18 U.S.C. § 1512) ......................................................... 15

   A.   The certification of the Electoral College vote is an official proceeding .................. 15

      1.   Background ........................................................................................ 15

      2.   Certification of the Electoral College vote is a proceeding before the Congress ... 16

      3.   The proceeding before the Congress is not limited to proceedings "affecting the administration of justice" ................................................................................ 20

      *4.*   *Yates v. United States* and legislative history do not limit the meaning of Section 1512(c)(2) to proceedings involving document destruction or "the administration of justice" ........................................................................................................ 23

      5.   Defendant's violation of multiple statutes does not bar a prosecution under Section 1512(c)(2) ............................................................................................ 27

   B.   18 U.S.C. § 1512(c)(2) is not unconstitutionally vague and the defendant had fair notice that his actions are punishable under 18 U.S.C. § 1512(c)(2) .................................. 28

      1.   The "otherwise" catch-all clause is not unconstitutionally vague as applied here. 28

      2.   The word "corruptly" is not unconstitutionally vague as applied here .................. 30

      3.   The word "official proceeding" is not unconstitutionally vague as applied here ... 32

    4.     The exercise of prosecutorial discretion does not render a statute vague ............... 33

IV.  The Court Should Deny Fischer's Motion to Dismiss Counts Four and Five, Alleging Violations of 18 U.S.C. § 1752 .................................................................................................. 35

   A.     The Vice President can "temporarily visit" the U.S. Capitol ..................................... 35

   B.     18 U.S.C. § 1752 does not require the government to prove that the restricted area was restricted at the Secret Service's direction ...................................................... 39

V.  The Indictment Satisfies the Notice and Presentment Requirements ............................... 42

# TABLE OF AUTHORITIES

**Cases**

*Arthur Andersen v. United States*,
   544 U.S. 696 (2005) ................................................................................................ 31, 33

*Babb v. Wilkie*,
   140 S. Ct. 1168, 1177 (2020) ................................................................................... 23, 40

*Blair v. City of Evansville, Ind.*,
   361 F. Supp.2d 846 (S.D. Ind. 2005) .............................................................................. 39

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973) ......................................................................................................... 6

*City of Houston v. Hill*,
   482 U.S. 451 (1987) ......................................................................................................... 6

*Coates v. Cincinnati*,
   402 U.S. 611 (1971) ..................................................................................................... 5, 8

*Collazos v. United States*,
   368 F.3d 190 (2d Cir. 2004) ........................................................................................... 29

*Elonis v. United States*,
   135 S. Ct. 2001 (2015) ................................................................................................... 10

*Genus Med. Techs. LLC v. United States Food & Drug Admin.*,
   994 F.3d 631 (D.C. Cir. 2021) ....................................................................................... 38

*Hamling v. United States*,
   418 U.S. 87 (1974) ......................................................................................................... 43

*Hubbard v. United States*,
   514 U.S. 695 (1995) ................................................................................................. 23, 27

*Johnson v. United States*,
   576 U.S. 591 (2015) ................................................................................................. passim

*Levin v. United States*,
   568 U.S. 503 (2013) ......................................................................................... 23, 35, 40

*Loughrin v. United States*,
   573 U.S. 351 (2014) ....................................................................................................... 27

*Lovitky v. Trump*,
   949 F.3d 753 (D.C. Cir. 2020) ....................................................................................... 38

*Marks v. United States*,
    430 U.S. 188 (1977) ..................................................................................... 26

*Members of the City Council v. Taxpayers for Vincent*,
    466 U.S. 789 (1984) ................................................................................ 6, 15

*Parker v. Levy*,
    417 U.S. 733 (1974) ..................................................................................... 34

*Pub. Investors Arbitration Bar Ass'n v. S.E.C.*,
    930 F. Supp. 2d 55 (D.D.C. 2013) .............................................................. 40

*Russello v. United States*,
    464 U.S. 16 (1983) ....................................................................................... 21

*Smith v. Goguen*,
    415 U.S. 566 (1974) ....................................................................................... 5

*Skilling v. United States*,
    561 U.S. 358 (2010) ....................................................................................... 5

*State v. Illig-Renn*,
    341 Or. 228 (2006) ......................................................................................... 8

*State v. Steen*,
    164 Wash. App. 789 (2011) ........................................................................... 8

*United States v. Aguilar*,
    515 U.S. 593 (1995) ..................................................................................... 30

*United States v. Ballestas*,
    795 F. 3d 138 (D.C. Cir. 2015) ..................................................................... 3

*United States v. Batchelder*,
    442 U.S. 114 (1979) ..................................................................................... 28

*United States v. Berger*,
    473 F.3d 1080 (9th Cir. 2007) ..................................................................... 43

*United States v. Bowdoin*,
    770 F. Supp. 2d 142 (D.D.C. 2011) .............................................................. 3

*United States v.
Bowser*, 964 F.3d 26 (D.C. Cir. 2020) ......................................................... 21

*United States v. Brenson*,
    104 F.3d 1267 (11th Cir. 1997) ................................................................... 31

*United States v. Brice,*
   926 F.2d 925 (9th Cir. 1991) ..................................................................... 8

*United States v. Bronstein,*
   849 F.3d 1101 (D.C. Cir. 2017) .................................................................. 5

*United States v. Burge,*
   711 F.3d 803 (7th Cir. 2013) ................................................................... 29

*United States v. Bursey,*
   416 F.3d 301 (4th Cir. 2005) ................................................................... 39

*United States v. Caldwell,*
   21-cr-28 (APM), 2021 WL 6062718 (D.D.C. Dec. 20, 2021)........................ passim

*United States v. Caputo,*
   201 F. Supp. 3d 65 (D.D.C. 2016) ........................................................... 38

*United States v. Carson,*
   560 F.3d 566, 584 (6th Cir. 2009) ........................................................... 26

*United States v. Cassel,*
   408 F.3d 622 (9th Cir. 2005) ................................................................... 10

*United States v. Cervantes,*
   No. 16-10508, 2021 WL 2666684 (9th Cir. June 29, 2021)........................... 26

*United States v. Cisneros,*
   26 F. Supp. 2d 24 (D.D.C. 1998) ............................................................. 43

*United States v. Du Bo,*
   186 F.3d 1177 (9th Cir. 1999) ................................................................. 43

*United States v. Dunn,*
   434 F. Supp. 2d 1203 (M.D. Ala. 2006) ............................................... 18, 19

*United States v. Edwards,*
   869 F.3d 490 (7th Cir. 2017) ......................................................... 31, 32, 34

*United States v. Ermoian,*
   752 F.3d 1165 (9th Cir. 2013) ....................................................... 17, 18, 19

*United States v. Featherston,*
   461 F.2d 1119 (5th Cir. 1972) ................................................................... 7

*United States v. Friske,*
   640 F.3d 1288 (11th Cir. 2011) ............................................................... 32

*United States v. Gilbert,*
    813 F.2d 1523 (9th Cir. 1987) ................................................... 10

*United States v. Gonzalez,*
    No. 20-cr-40 (BAH), 2020 WL 6342948 (D.D.C. Oct. 29, 2020)................................ 5

*United States v. Gordon,*
    710 F.3d 1124 (10th Cir. 2013) ................................................... 32

*United States v. Griffin,*
    No. 21-cr-92 (TNM), 2021 WL 2778557 (D.D.C. July 2, 2021) ..................... passim

*United States v. Haldeman,*
    559 F.2d 31, 124 (D.C. Cir. 1976) (*en banc*)........................................... 34

*United States v. Harmon,*
    No. 19-cr-395 (BAH), 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) ............................ 5

*United States v. Howard,*
    569 F.2d 1331, 1333 (5th Cir. 1978) ................................................... 29

*United States v. Howard,*
    No. 21-cr-28-pp, 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021)..................... passim

*United States v. Huff,*
    630 F. App'x 471, 489 (6th Cir. 2015) (unpublished)............................... 9

*United States v. Junot,*
    1990 WL 66533 (9th Cir. May 18, 1990) ................................................... 39

*United States v. Kelley,*
    36 F.3d 1118, 1127 (D.C. Cir. 1994)................................................... 18

*United States v. Kelly,*
    147 F.3d 172 (2d Cir. 1998) ................................................... 31

*United States v. Matthews,*
    505 F.3d 698 (7th Cir. 2007) ................................................... 32

*United States v. McHugh,*
    21-cr-453 (JDB), ECF No. 51 (D.D.C. Feb. 1, 2022)..................... passim

*United States v. Mechanic,*
    454 F.2d 849 (8th Cir. 1971) ................................................... passim

*United States v. Montgomery,*
    21-cr-46 (RDM), 2021 WL 6134591 (D.D.C. Dec. 28, 2021) ..................... passim

*United States v. Morrison,*
    529 U.S. 598 (2000) ........................................................................................... 6

*United States v. Morrison,*
    98 F.3d 619 (D.C. Cir. 1996) ........................................................................... 31

*United States v. Mostofsky,*
    21-cr-138 (JEB), 2021 WL 6049891 (D.D.C. Dec. 21, 2021) ......................... passim

*United States v. Nat'l Dairy Products Corp.,*
    372 U.S. 29 (1963) ........................................................................................... 5

*United States v. Nordean,*
    21-cr-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021) ......................... passim

*United States v. Perez,*
    575 F.3d 164 (2d Cir. 2009) *cert. denied*, 140 S. Ct. 1106 (2020) .................. 18, 19

*United States v. Petruk,*
    781 F.3d 438 (8th Cir. 2015) ............................................................ 25, 28, 29, 30

*United States v. Phillips,*
    583 F.3d 1261 (10th Cir. 2009) ....................................................................... 26

*United States v. Phomma,*
    No. 20-465, 2021 WL 4199961 (D. Or. Sept. 15, 2021) ............................. 3, 11, 12

*United States v. Poindexter,*
    951 F.2d 369 (D.C. Cir. 1991) ................................................................... 30, 31

*United States v. Ramos,*
    537 F.3d 439 (5th Cir. 2008) ...................................................................... 18, 19

*United States v. Resendiz-Ponce,*
    549 U.S. 102 (2007) ......................................................................................... 43

*United States v. Ring,*
    628 F. Supp. 2d 195 (D.D.C. 2009) ............................................................ 25, 29

*United States v. Rundo,*
    990 F.3d 709 (9th Cir. 2021) ............................................................................ 6

*United States v. Sandlin,*
    21-cr-88 (DLF), 2021 WL 5865006 (D.D.C. Dec. 10, 2021) ........................... passim

*United States v. Shotts,*
    145 F.3d 1289 (11th Cir. 1998) ....................................................................... 31

*United States v. Stringer*,
   730 F.3d 120 (2d Cir. 2013) .................................................................. 43

*United States v. Sutherland*,
   921 F.3d 421 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 1106 (2020) ........................................ 18

*United States v. Verrusio*,
   762 F.3d 1 (D.C. Cir. 2014) .................................................................. 43

*United States v. Volpendesto*,
   746 F.3d 273 (7th Cir. 2014) ................................................................. 26

*United States v. Williams*,
   553 U.S. 285 (2008) ...................................................................... passim

*United States v. Williamson*,
   903 F.3d 124 (D.C. Cir. 2018) ............................................................... 43

*United States v. Wood*,
   No. 20-cr-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021) ........................................ passim

*United States v. Young*,
   916 F.3d 368 (4th Cir.), *cert. denied*, 140 S. Ct. 113 (2019) ................................................ 32

*Virginia v. American Booksellers Ass'n*,
   484 U.S. 383 (1988) ......................................................................... 6

*Virginia v. Hicks*,
   539 U.S. 113 (2003) ...................................................................... 6, 12

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008) ......................................................................... 5

*White House Vigil for ERA Comm. v. Clark*,
   746 F.2d 1518 (D.C. Cir. 1984) .............................................................. 38

*Wilson v. DNC Servs. Corp.*,
   417 F. Supp. 3d 86 (D.D.C. 2019), *aff'd* 831 F. App'x 513 (D.C. Cir. 2021) ........................ 40

*Yates v. United States,*
   574 U.S. 528 (2015) .................................................................. 22, 25, 26

## Statutes and Constitutional Provisions

U.S. Const. art. II, § 1, cl. 3 ................................................................... 16

U.S. Const amend. XII. ........................................................................ 16

3 U.S.C. § 15 .............................................................................. 16, 19

3 U.S.C. § 16 ................................................................................................ 16, 20

3 U.S.C. § 17 ..................................................................................................... 16

3 U.S.C. § 18 ..................................................................................................... 16

18 U.S.C. § 231(a)(3) ................................................................................. passim

18 U.S.C. § 232(1) ........................................................................................... 4, 9

18 U.S.C. § 1505 .......................................................................................... 21, 30

18 U.S.C. § 1512(c)(2) ............................................................................... passim

18 U.S.C. § 1515 ............................................................................................... 17

18 U.S.C. § 1515(a)(1) ..................................................................................... 22

18 U.S.C. § 1515(a)(1)(B) .......................................................................... 16, 20

18 U.S.C. § 1515(b) .......................................................................................... 31

18 U.S.C. § 1752 ........................................................................................ passim

18 U.S.C. § 3056(a)(1) ..................................................................................... 41

26 U.S.C. § 7212(a) ......................................................................................... 8, 9

Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 192 (Mar. 9, 2006) .................. 42

Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, 96 Stat. 1248 ...... 21

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 1102, 116 Stat. 745, 807 .......... 21

Cal. Penal Code § 148 ......................................................................................... 8

**Other Authorities**

148 Cong. Rec. S6550 (daily ed. July 10, 2002) .............................................. 24

S. Rep. No. 107-146, at 2 (2002) ..................................................................... 24

S. Rep. 91-1252 (1970) ..................................................................................... 41

S. Rep. No. 97-532, at 17 (1982) ...................................................................... 17

Elizabeth Craig, *Protecting the President from Protest: Using the Secret Service's Zone of Protection to Prosecute Protesters*, 9 J. Gender Race & Just. 665, 668–69 (2006) .......... 41

**Rules**

Fed. R. Crim. P. 7(c)(1) ........................................................................................................... 3

## INTRODUCTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Joseph Fischer's Motion to Dismiss Counts One, Three, Four, and Five of the Superseding Indictment (ECF No. 54) ("Mot."). Several courts in this district have recently written opinions rejecting many, if not all, of the challenges defendant raises here. *See United States v. Sandlin,* 21-cr-88 (DLF), 2021 WL 5865006 (D.D.C. Dec. 10, 2021); *United States v. Caldwell*, 21-cr-28 (APM), 2021 WL 6062718 (D.D.C. Dec. 20, 2021); *United States v. Mostofsky*, 21-cr-138 (JEB), 2021 WL 6049891 (D.D.C. Dec. 21, 2021); *United States v. Montgomery,* 21-cr-46 (RDM), 2021 WL 6134591 (D.D.C. Dec. 28, 2021); *United States v. Nordean,* 21-cr-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021); *United States v. McHugh,* 21-cr-453 (JDB), ECF No. 51 (D.D.C. Feb. 1, 2022); *United States v. Griffin*, No. 21-cr-92 (TNM), 2021 WL 2778557 (D.D.C. July 2, 2021). There is no reason for this Court to differ. The Court should deny the motion in its entirety.

## FACTUAL BACKGROUND

Fischer's role in the January 6, 2021, attack on the U.S. Capitol is described in the statement of facts supporting the criminal complaint (ECF No. 1) and in the government's opposition to Fischer's Motion to Modify Release Conditio1ns (ECF No. 49). In summary, after sending messages such as "Take democratic congress to the gallows," and "they should storm the capital and drag all the democrates into the street and have a mob trial," Fischer traveled from Pennsylvania to Washington, D.C. to participate in the events of January 6, 2021. On that day, Fischer went to the Capitol. Standing outside the Rotunda Doors, he yelled "Charge!" and then "Motherfuckers!" as he rushed forward through the doors on the heels of a flagpole-wielding rioter, straight at a line of police officers who were trying to clear the area. Fischer, the other rioter, and multiple officers fell to the ground. After being helped back to his feet, Fischer spoke heatedly to

1

officers in the area, saying that he was also a police officer, and that "sometimes the country is worth more than your job." He then pressed himself against an officer's riot shield and then ended up behind the police line before being pushed out the door. He later commented, "We pushed police back about 25 feet, got pepper balled and OC sprayed, but entry into the Capitol was needed to send a message that we the people hold the real power."

## **PROCEDURAL HISTORY**

On March 19, 2021, the grand jury returned an indictment charging Fischer with civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One); assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1) (Count Two); obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count Three); entering or remaining on restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Four); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Five); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Six); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Seven). ECF No. 15. On November 10, the grand jury returned a superseding indictment with the same counts. ECF No. 52. Fischer filed the instant motion on January 12, 2022, seeking dismissal of Counts One, Three, Four, and Five of the superseding indictment.

## **ARGUMENT**

Fischer's challenges to Count One (civil disorder, in violation of 18 U.S.C. § 231(a)(3)), Count Three (obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2)) and Counts Four and Five (unlawful entry and disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) and (2)) all lack merit.

I.      **Legal Standard**

Federal Rule of Criminal Procedure 7(c)(1) states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An "indictment's main purpose is to inform the defendant of the nature of the accusation against him." *United States v. Ballestas*, 795 F. 3d 138, 148–49 (D.C. Cir. 2015) (citation omitted). Because dismissal of an indictment "directly encroaches upon the fundamental role of the grand jury," however, "dismissal is granted only in unusual circumstances." *Ballestas*, 795 F. 3d at 148 (internal quotation marks omitted). "An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

II.     **Fischer's Motion to Dismiss Count One, Alleging a Violation of 18 U.S.C. § 231, Fails**

Improperly isolating various statutory terms, Fischer argues that Section 231(a)(3), the civil disorder statute, is either unconstitutionally vague or overbroad. Three judges in this district have recently rejected nearly identical challenges to Section 231. *See Mostofsky*, 2021 WL 6049891, at *8–*9 (rejecting overbreadth challenges); *Nordean,* 2021 WL 6134595, at *16–*17 (rejecting vagueness and overbreadth challenges); *McHugh,* 21-cr-453 (JDB), ECF No. 51, at 28–37.[1] This Court should too.

---

[1] A number of courts outside this circuit have also recently rejected similar challenges to Section 231. *See United States v. Phomma*, No. 20-465, 2021 WL 4199961, at *5 (D. Or. Sept. 15, 2021); *United States v. Rupert*, No. 20-cr-104 (NEB/TNL), 2021 WL 1341632, at *16–*20 (D. Minn. Jan. 6, 2021) (Report & Recommendation), *adopted*, 2021 WL 942101 (D. Minn. Mar. 12, 2021); *United States v. Pugh*, No. 1:20-cr-73-TFM, slip op. (S.D. Ala. May 13, 2021); *United States v. Wood*, No. 20-cr-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021); and *United States v. Howard*, No. 21-cr-28-pp, 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021).

Section 231(a)(3) (the civil disorder statute) criminalizes any "act" (or attempted act) to "obstruct, impede, or interfere" with a law enforcement officer "lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder." 18 U.S.C. § 231(a)(3). For the statute to apply, the civil disorder must "in any way or degree obstruct[], delay[], or adversely affect[] commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." *Id.* The statute defines civil disorder as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

Reading the statute as a whole, it passes muster; Fischer cannot meet the high bar required to invalidate a statute as vague or overbroad. The statute sufficiently provides notice of the conduct it prohibits. Nor are there a substantial number of unconstitutional applications, particularly compared with the statute's plainly legitimate conduct restrictions. Vagueness and overbreadth are not judged according to whether a litigant might identify a hypothetical edge case where application of a law might be questionable, yet Fischer erroneously urges the Court to do so.

A.      **Vagueness and overbreadth doctrines**

An outgrowth of the Due Process Clause of the Fifth and Fourteenth Amendments, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

A statute is not unconstitutionally vague simply because its applicability is unclear at the

margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is not vague because it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603–04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

There is a strong presumption that a statute is not vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Other courts in this district have recognized that high bar. *See United States v. Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020); *see also United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion).

Facial overbreadth challenges—in which a defendant asserts that a statute, constitutionally applied to him, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)—are even more exceptional. Overbreadth can invalidate a criminal law

only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep,'" and no limiting construction is available. *Id.* (quoting *New York v. Ferber*, 458 U.S. 747, 769–771 (1982)); *see also City of Houston v. Hill*, 482 U.S. 451, 458 (1987). The Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.

 "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, a defendant must show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." *Id.* at 801. "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Invalidating a statute for overbreadth is "strong medicine" to be applied "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). If the statute is "readily susceptible" to a narrowing construction that would make it constitutional, it must be upheld. *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988); *accord Broadrick*, 413 U.S. at 613; *United States v. Rundo*, 990 F.3d 709, 714 (9th Cir. 2021) ("we construe [the riot statute, 18 U.S.C. §§ 2101–2102] as constitutional if we can reasonably do so").

## B.    Section 231 is not void for vagueness

Federal legislation enjoys a presumption of constitutionality that may only be overturned "upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison,* 529 U.S. 598, 607 (2000). Fischer cannot overcome this presumption.

Section 231(a)(3) is not constitutionally vague. *See McHugh,* 21-cr-453, ECF No. 51, at 23*; Nordean,* 2021 WL 6134595, at *17. It provides sufficient notice of the conduct it prohibits. The terms Fischer attacks, such as "any act to obstruct, impede, or interfere" and "civil disorder," Mot. at 6–7, do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Nordean*, 2021 WL 6134596*,* at *16 (observing that "there are specific fact-based ways to determine whether a 'defendant's conduct interferes with or impedes others,' or if a law enforcement officer is performing his official duties 'incident to and during' a civil disorder."). Like the challenge recently rejected by Judge Bates, Fischer's motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation—the latter is perfectly normal, while the former is indicative of constitutional difficulty." *McHugh,* 21-cr-453, ECF No. 51, at 23.

Section 231(a)(3) does not prohibit mere presence at a civil disorder, but rather, "an act committed during the course of such disorder." *United States v. Mechanic*, 454 F.2d 849, 853 (8th Cir. 1971). And not just any act: it prohibits only concrete "act[s]" that are performed with the specific purpose to "obstruct, impede, or interfere" with firefighters or law enforcement carrying out their official duties during a civil disorder. It punishes intentional conduct, not "mere inadvertent conduct." *United States v. Featherston,* 461 F.2d 1119, 1122 (5th Cir. 1972).

Contrary to defendant's arguments, the statute's terms are thus quite different from statutory terms that courts have found to be vague, such as statutes that turn on subjective judgments of whether a defendant's conduct was "annoying" or "indecent," or those that depend on the victim's state of mind, as in the cases defendant cites. *See Nordean,* 2021 WL 6134595, at

7

*16*; *see also Williams*, 553 U.S. at 306; Mot. at 8 (citing *Coates*, 402 U.S. at 614, *United States v. Kozminski,* 487 U.S. 931, 949–50 (1988)).[2] "An ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement." *McHugh,* 21-cr-453, ECF No. 51, at 33. In addition, Section 231(a)(3) is not unique; many state and federal statutes likewise criminalize "obstructing" the government's efforts to enforce the law and maintain public order, and they have been upheld. *See, e.g.,* 26 U.S.C. § 7212(a) (prohibiting obstructing or impeding the administration of the tax laws); 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); *United States v. Brice,* 926 F.2d 925, 930–31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101-20.305, regulation prohibiting impeding or disrupting government duties); *see also* Cal. Penal Code § 148 (prohibiting resisting, delaying, or obstructing any peace officer or emergency medical technician); *State v. Illig-Renn,* 341 Or. 228 (2006) (rejecting constitutional attacks leveled against O.R.S. 162.247(1)(b), which prohibits interference with a police officer); *State v. Steen,* 164 Wash. App. 789, 808 (2011) (rejecting as-applied constitutional challenge to RCW 9A.76.020(1), which criminalizes obstructing police officers).

Fischer also claims that the phrase "incident to and during the commission of a civil disorder" is vague because he cannot tell whether the statute requires an individual to have

---

[2] Fischer also cites *McCoy v. City of Columbia*, 929 F. Supp. 2d 541 (D.S.C. 2013) (Mot. at 11); he states that *McCoy* invalidated the law at issue as overbroad, but *McCoy* in fact found it unconstitutionally vague. Id. at 554. In any event, *McCoy* is distinguishable. *See McHugh,* 21-cr-453, ECF No. 51, at 33. *McCoy* invalidated an ordinance making it unlawful "for any person to interfere with or molest a police officer in the lawful discharge of his duties." *Id.* at 546. As Judge Bates observed, unlike Section 231(a)(3), "the ordinance at issue in *McCoy* did not include a scienter requirement, and its use of only two operative verbs ('interfere and molest') prevented interpreters from . . . giving those words 'more precise content by the neighboring words with which it is associated." *McHugh*, at 33 n.24 (citing *McCoy*, 929 F. Supp. 2d at 553) ((quoting *United States v. Stevens*, 559 U.S. 460, 474 (2010)).

participated in the civil disorder or if it is sufficient that he be in the general vicinity of the event. Mot. at 7. This argument, too, is meritless. "The crime set forth by the statute is not mere presence at a civil disorder . . . but an act committed during the course of such a disorder, so 'civil disorder' simply describes the environment in which the act must be committed in order to be subject to prosecution under § 231(a) (3)." *Mechanic*, 454 F.2d at 852; *see also Howard*, 2021 WL 3856290, at *14 ("[T]he statute does not require the government to prove that the defendant created the civil disorder, or that he was participating in the civil disorder."). Contrary to Fischer's argument that any "tumultuous public gathering" could qualify (Mot. at 7), "it is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual." *Mechanic*, 454 F.2d at 853; *see* 18 U.S.C. § 232(1); *cf. United States v. Huff*, 630 F. App'x 471, 489 (6th Cir. 2015) (unpublished) (rejecting vagueness challenge to "civil disorder" term in 18 U.S.C. § 231(a)(2) and citing definition in 18 U.S.C. § 231(1)). *See McHugh*, 21-cr-453, ECF No. 51, at 32, 32 n.22.

And even if a broad range of public gatherings could be deemed "civil disorders," Section 231(a)(3) criminalizes only particular conduct, not mere participation in such a disorder. The "civil disorder" language operates to <u>narrow</u> the situation where the statute may apply—unlike other statutes, which criminalize acts of obstruction, wherever they may take place. *See* 26 U.S.C. § 7212(a) (criminalizing obstruction of tax laws). The requirement that the *actus reus* take place in the context of a civil disorder does not make Section 231 vague; to the contrary, it limits its application.

Fischer's argument that the statute is vague because it lacks an express scienter requirement or *mens rea* (Mot. at 7–8) is also incorrect. Fischer ignores the fact that Section 231(a)(3) requires

*intent*, which narrows its scope. *See Williams*, 553 U.S. at 294 (focusing on scienter requirement in finding that a statute was not overbroad); *McHugh,* 21-cr-453, ECF No. 51, at 29–31 (finding that Section 231(a)(3) includes an intent requirement). The requirement that a defendant who violates Section 231(a)(3) act with the intent to obstruct, interfere or impede is critical to the First Amendment analysis. *See United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir. 1987) (intent requirement prevents application of statute to protected speech). The statute requires proof that the "act" was done "to obstruct, impede, or interfere" with a firefighter or police officer, *i.e.,* the defendant's purpose or intent in performing the "act" must be to obstruct, impede, or interfere. *See Mechanic*, 854 F.2d at 854 (construing Section 231(a)(3) to include an intent requirement). And even if the statute lacked an express scienter requirement, courts "generally interpret [] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (citation omitted); *see also United States v. Cassel*, 408 F.3d 622, 634 (9th Cir. 2005) ("[E]xcept in unusual circumstances, we construe a criminal statute to include a *mens rea* element even when none appears on the face of the statute.").

Fischer's vagueness claim also fails because his conduct clearly falls within the ambit of Section 231. The Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Nordean,* 2021 WL6134595, at *17 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (cleaned up)); *see generally Wood*, 2021 WL 3048448, at *9 ("Defendant does not have standing to bring a facial vagueness challenge" to § 231(a)(3) because he failed to "demonstrate that [the statute]is vague as applied to his conduct"). The January 6, 2021 attack on the United States Capitol was clearly a "civil

disorder," not just some "tumultuous public gathering" to which the police were called. And there is no question that Fischer participated in the disorder. Tracking the statutory language, the superseding indictment alleges that he "commit[ted] an act to obstruct, impede, and interfere with a law enforcement officer." ECF No. 52. Fischer crossed into the restricted area and charged inside the Capitol, straight into a police line. He was not some bystander yelling at police to desist. No one could credibly claim to believe that he could lawfully enter the Capitol during the riot, and then physically block, push, and press against law enforcement who were attempting to protect and clear the mob from the Capitol. The statute is "sufficiently clear that a normally intelligent person could ascertain its meaning and would be given fair notice of whether or not his conduct is forbidden." *Mechanic*, 454 F.2d at 854.

### C.      Section 231(a)(3) is not unconstitutionally overbroad

Fischer's remaining claims are most appropriately cast as an overbreadth argument—he contends that Section 231 criminalizes too wide an array of activity, including protected speech. "[T]his exact argument has been heard and rejected by at least five different federal judges all within the last year." *McHugh*, ECF No. 51, at 35 (citing *Mostofsky*, 2021 WL 6049891, at *8–9; *Nordean*, 2021 WL 6134595, at *17; *Howard*, 2021 WL 3856290, at *11–12; *Phomma*, 2021 WL 4199961, at *4–5; *Wood*, 2021 WL 3048448, at *7–8, and adding, "This Court joins them.").

Section 231(a)(3) is not overbroad because "the statute's potentially unconstitutional applications are few compared to its legitimate ones." *Mostofsky,* 2021 WL 6049891, at *8. The statute's scope is primarily, if not exclusively, conduct or unprotected speech, such as threats. The plain text supports this reading. *See Nordean*, 2021 WL 6134595, at *17. An overbreadth challenge faces a steep uphill climb when the statute focuses mainly on conduct, as Section 231(a)(3) does. *See Hicks*, 539 U.S. at 119, 124 (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct" and

observing that laws "not specifically addressed to speech or to conduct necessarily associated with speech" are far less likely to be overbroad).

In *Mechanic*, the Eighth Circuit rejected a similar overbreadth challenge to § 231(a)(3). "The section applies only to a person who acts to impede, obstruct, or interfere with an official described in the statute." 454 F.2d at 852. The Eighth Circuit held that the "conduct involved here [the massing of a mob that threw stones at an R.O.T.C. building on a college campus to protest the Viet Nam war, followed by rock and bottle-throwing at firemen who arrived to quell the disturbance] is not entitled to constitutional protection." *Id.* As the Court explained, "[t]he First Amendment has not been extended to protect rioting, inciting to riot, or other forms of physical violence." *Id.* (citation omitted).

Fischer argues that Section 231(a)(3) could prohibit conduct "undertaken merely to convey a message or symbolic content" (and protected by the First Amendment) because it applies to "any act to obstruct, impede, or interfere." Mot. at 6. Even if there could be "limited instances in which speaking constitutes the 'act' of interfering with a law-enforcement officer," *Mostofsky,* 2021 WL 6049891, at *8, those instances are just that: limited. *McHugh*, 21-cr-453, ECF No. 51, at 36. As *Mostofsky* found, Section 231's "plain text, however, indicates that it is 'targeted primarily if not exclusively at conduct rather than speech.'" *Id.* (citing *Phomma*, 2021 WL 4199961, at *5); *see also Nordean,* 2021 WL 6134595, at *17 ("Section 231(a)(3) does not even mention speech, and it simply does not prohibit peaceful expression or association."); *Mechanic*, 454 F.2d at 852 (Section 231 "does not purport to reach speech of any kind. It reaches only acts to impede, obstruct, or interfere with police officers and firemen"), *see also Wood*, 2021 WL 3048448, at *7 ("This Court agrees with *Mechanic* that § 231(a)(3) applies to conduct, not speech."). As such, it is unlikely to present a "realistic danger" that it will "significantly compromise recognized First

Amendment protections." *Mostofsky,* 2021 WL 6049891, at *17 (quoting *Vincent,* 466 at 800).

Fischer relatedly contends that Section 231 "casts far too wide a net" because it is not limited to "violent acts or acts that result in bodily injury or that otherwise put persons or property in imminent danger," and could therefore reach "acts with protected expressive content or those that occur in a traditional public forum." *See* Mot. at 9.[3]  Like Mostofsky, Fischer offers examples (in fact, identical examples) of potential unlawful applications of Section 231(a)(3), such as a bystander "who flips off officers to distract or to encourage resistance, or one who records police activity with a cell phone." Mot. at 10; *cf. Mostofsky,* 2021 WL 6049891 at *8.

Judge Boasberg held that Mostofsky was wrong; Fischer is wrong too. *Mostofsky,* 2021 WL 6049891, at *8–*9. Fischer's hypotheticals do not undermine the conclusion that "[m]any more potential applications would fall within the statute's plainly legitimate sweep." *Id.* at *8 (citation omitted). As noted above, the statute prohibits both violent acts (which are not protected by the First Amendment), and non-violent conduct that is not expressive, such as "creating a barricade to prevent officers' movement." *See id.* Again, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Mostofsky,* 2021 WL 6049891, at *8 (quoting *Vincent*, 466 U.S. at 800); *see also Howard*, 2021 WL 3856290, at *11 (rejecting overbreadth claim while noting that "because the statute does not require a violent act or an assaultive act, the government perhaps could charge someone who yelled at an officer during a civil disorder and could argue that the yelling was an 'act' that 'attempted to obstruct' an officer performing her lawful duties"). Courts have denied similar challenges to Section 231(a)(3) while recognizing that the statute is not limited

---

[3]     Fischer's reference to "acts…that occur in a traditional public forum" is misguided. While there is a greater right to speak in a public forum, there is no right to engage in non-protected (indeed, criminal) conduct there.

to "violent" acts for the simple reason that the statute is not overbroad, as explained above, and so no limiting construction is required. *See, e.g., Mostofsky,* 2021 WL 6049891 at *9 (finding that "the Court need not adopt a limiting construction such that § 231(a)(3) reaches only violent conduct" to uphold the statute and collecting cases); *see also McHugh,* 21-cr-453, ECF No. 51, at 36 n.26, *Wood,* 2021 WL 3048448, at *7 (rejecting overbreadth challenge to § 231(a)(3) while recognizing that it is possible for nonviolent acts to also fall within the statute's prohibition.").[4]

Moreover, Fischer's hypotheticals, like Mostofsky's, may not even be criminal under the statute because they "would not necessarily rise to the level of 'obstruct[ing], imped[ing], or interfer[ing]' with a law-enforcement officer," as the statute requires. *Mostofsky,* 2021 WL 6049891, at *8. Indeed, as noted above, Section 231 contains numerous guardrails ensuring that not all "acts" qualify: they must obstruct, interfere with, or impede; and they must occur during a civil disorder, which is defined, in part, as a public disturbance "involving acts of violence." *Mostofsky,* 2021 WL 6049891, at *8; *Wood,* 2021 WL 3048448, at *7. Even if "some expressive conduct may fall within its remit," however, Section 231(a)(3) still would not "make unlawful a substantial amount of constitutionally protected conduct." *Mostofsky,* 2021 WL 6049891, at *8 (citation omitted). Fischer has failed to show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Vincent,* 466 U.S. at 801.   His overbreadth and vagueness challenges fail.

---

[4]       While *Mechanic* states that Section 231(a)(3) "applies only to violent physical acts," courts do not take this to mean that it imposed such a limitation on the statute; rather, "it appears that the Eighth Circuit was considering the specific 'acts' committed by the defendants in that case—throwing cherry bombs at police officers and firemen—when it referenced "violent acts." *Howard,* 2021 WL 3856290, at *11; *Nordean,* 2021 WL 6134595 at *17 n.14.

III.   **The Court Should Deny Fischer's Motion to Dismiss Count Three (Obstruction of an Official Proceeding, in Violation of 18 U.S.C. § 1512)**

Fischer argues that Count Three, charging a violation of 18 U.S.C. § 1512(c)(2), should be dismissed because Congress's certification of the Electoral College vote is not an "official proceeding," and because the statute is unconstitutionally vague as applied. As set forth below, and as other judges in his district have unanimously held, these arguments lack merit.

A.   **The certification of the Electoral College vote is an official proceeding**

Section 1512(c)(2) of Title 18 of the U.S. Code provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." The defendant argues that Congress's certification of the Electoral College vote on January 6, 2021, does not qualify as an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2) because it does not concern the "administration of justice." ECF No. 54, 14–19. His argument is contrary to the plain text of the statute and every recent decision in this district considering the issue.  *See Sandlin,* 2021 WL 5865006, at *3–*10; *Caldwell*, 2021 WL 6062718, at *4–*7; *Mostofsky*, 2021 WL 6049891, at *9–*10; *Montgomery*, 2021 WL 6134591, at *4–*10; *Nordean,* 2021 WL 6134595, at *4–*6; *McHugh,* 21-cr-453, ECF No. 51, at 7–18.

1.   **Background**

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote. Two separate provisions in the Constitution mandate that the Vice President while acting as the President of Senate "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted." U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII. Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock

in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15. Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House (who are required to read them "in the presence and the hearing of the two Houses"), ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives." *Id.* The President of the Senate is empowered to "preserve order" during the Joint Session. 3 U.S.C. § 18. Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once." 3 U.S.C. § 17. The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared." 3 U.S.C. § 16.

The obstruction statute with which the defendant is charged prohibits corruptly obstructing, influencing, or impeding any official proceeding. 18 U.S.C. § 1512(c)(2). An official proceeding for purposes of § 1512(c)(2) is defined, in relevant part, as "a proceeding before the Congress." 18 U.S.C. § 1515(a)(1)(B) (emphasis added).

### 2.    Certification of the Electoral College vote is a proceeding before the Congress

The certification of the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and, therefore, an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2). That conclusion flows principally from the obstruction statute's plain text. *See Caldwell*, 2021 WL 6062718 at * 4 ("A straightforward reading of that definition easily reaches the Certification of the Electoral College vote."). Skipping past the text, the defendant argues that Congress's intent and other language and

16

structural features of the obstruction statute import a requirement that the proceeding be "adversarial" in nature and related to the administration of justice. Mot. at 14–19. That argument is incorrect.

Understanding what qualifies as an official proceeding "depends heavily on the meaning of the word 'proceeding'" because "official proceeding" is defined "somewhat circularly" as, among other things, a congressional "proceeding." *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013). The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term. In its broadest and most "general sense," a proceeding refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior." *Id.* (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com). The defendant does not meaningfully contend that the certification of the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is not a proceeding—and indeed an official proceeding— under that broad definition. And there is good reason to construe "proceeding" as used in 18 U.S.C. § 1515 broadly. While subsection (B) refers only to proceedings "before the Congress," other subsections encompass judicial proceedings, grand jury proceedings, any legally authorized proceedings before federal government agencies, and proceedings "involving the business of insurance." 18 U.S.C. § 1515(a)(1); *see* S. Rep. No. 97-532, at 17 (1982) (noting that the "term 'official proceeding'" in the obstruction statute is "defined broadly").

But even if the "legal—rather than lay—understanding" of proceeding governs Section 1515's interpretation, *see Ermoian*, 752 F.3d at 1170, the Electoral College vote certification qualifies. This narrower definition includes the "business conducted by a court or other official body; a hearing." Black's Law Dictionary, "proceeding" (11th ed. 2019). Taken with its modifier

"official," the term proceeding thus "connotes some type of formal hearing." *Ermoian*, 752 F.3d at 1170; *see United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) (the "more formal sense" of "official proceeding" is "correct in the context of § 1512"). For example, in cases assessing whether a law enforcement investigation amounts to an "official proceeding" as defined in Section 1515—including the cases relied upon by the defendant—courts analyze the degree of formality involved in an investigation. *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (holding that FBI investigation was not an "official proceeding" because that term "implies something more formal than a mere investigation"), *cert. denied*, 140 S. Ct. 1106 (2020); *Ermoian*, 752 F.3d at 1170–72 (same); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (holding that internal investigation conducted by a review panel within the Bureau of Prisons was an "official proceeding" because the review panel's "work [was] sufficiently formal"); *Ramos*, 537 F.3d at 463 (holding that internal investigation conducted by Customs and Border Patrol was not an "official proceeding" because that term *"*contemplates a formal environment"); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) (holding that investigation conducted by Bureau of Alcohol, Tobacco, and Firearms was not an "official proceeding" because that term encompasses "events that are best thought of as hearings (or something akin to hearings)"); *see also United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (holding that a "*formal* investigation" conducted by the Officer of the Inspector General at the Agency for International Development qualified as a "proceeding" for purposes of 18 U.S.C. § 1505) (emphasis added); *Montgomery*, 2021 WL 6134591, at *9 (concluding that "the most sensible reading of Section 1515 is that the term 'official proceeding' refers to "the business conducted by an official body that has formally convened for the purpose of conducting that business") (citation omitted).

Fischer cites *Ermoian, Ramos,* and *Dunn*, but claims that what these cases actually require

is that the conduct interfere with the "administration of justice" (Mot. at 16). Fischer misinterprets his own citations, which hold that ongoing law-enforcement or internal agency investigations are not "official proceedings" not because they do not involve the "administration of justice," but because "[t]hey are not formal hearings conducted before official bodies." *Sandlin*, 2021 WL 5865006, at *3. Moreover, none of these cases involved "a proceeding before the Congress," and they do not undermine the government's position because "an ongoing law enforcement investigation of a criminal enterprise bears no resemblance, as a matter of form or content, to the official process mandated by the Twelfth Amendment and the Electoral Count Act for certifying the electoral vote for President and Vice President." *Montgomery*, 2021 WL 6134591, at *6.

The formality involved in the certification of the Electoral College vote places it "comfortably within the category" of an official proceeding. *See Perez*, 575 F.3d at 169. Few events are as solemn and formal as a Joint Session of the Congress. That is particularly true of the certification of the Electoral College vote, which is expressly mandated by the Constitution and federal statute.

Required by law to begin at 1 p.m. on the January 6 following a presidential election, the certification of the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body." *See* Black's Law Dictionary, *supra*. The Vice President, as the President of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election. 3 U.S.C. § 15. As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection. *Id.* And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall." *See* 3 U.S.C. § 16 (describing where various officials must sit). The certification, moreover,

19

must terminate with a decision: no recess is permitted until the "the count of electoral votes" is "completed," and the "result declared." *Id.* In short, the certification of the Electoral College vote is a "proceeding before the Congress." *See* 18 U.S.C. § 1515(a)(1)(B).[5] Judges in this district have accordingly concurred. *See, e.g., Montgomery,* 2021 WL 6134591, at *10; *Sandlin,* 2021 WL 5865006, at *3–*4; *Mostofsky*, 2021 WL 6049891, at *10 (concluding that the certification of the Electoral College is an official proceeding within the meaning of 18 U.S.C. §§ 1515, 1512(c)(2)); *Caldwell*, 2021 WL 6062718 at * 4 ("The Certification of the Electoral College vote thus meets the definition of an 'official proceeding.'"); *Nordean,* 2021 WL 6134595 at *5 ("the certification is therefore a 'series of actions' that requires 'some formal convocation,' making it a 'proceeding before the Congress,' 18 U.S.C. §1515(a)(1)(B), and thus an 'official proceeding.'")

### 3. The proceeding before the Congress is not limited to proceedings "affecting the administration of justice"

The defendant improperly asks this Court to add a limitation to the definition and interpret "official proceeding" to mean only proceedings related "to a hearing before a tribunal affecting the administrative of justice." Mot. at 16–17. As an initial matter, it is difficult to imagine a proceeding more "official" than a constitutionally and statutorily prescribed Joint Session of Congress.

---

[5] In a footnote, Fischer contends that the certification is "merely ceremonial," an argument that should come as a surprise to the thousands of rioters who descended on the Capitol believing otherwise. Mot. at 14 n.2. Chief Judge Howell recently rejected this claim in an oral ruling denying a January 6 defendant's motion to dismiss. *United States v. DeCarlo*, 1/21/22 Tr. at 35–36. So did Judge Bates. *McHugh,* 21-cr-453, ECF No. 51, at 17–18. Contrary to Fischer's argument, "it is inaccurate to characterize the Certification that occurred on January 6 as a purely ministerial, legislative vote-counting event." *Caldwell*, 2021 WL 6062718*,* at *7 (citation omitted). That is because, as explained above, Congress convenes to render judgment on the votes cast by electors; parties may lodge objections, and each House must consider the objection and make a decision whether to overrule or sustain it.

Fischer claims that the statute's title, "Tampering with a victim, witness, or informant" (Mot. at 16), supports his position, but that title pre-dates the passage of Section 1512(c)(2) by almost 20 years. *See* Victim and Witness Protection Act of 1982 (VWPA), Pub. L. No. 97-291, § 4(a), 96 Stat. 1248, 1249–50. "When Congress enacted Section 1512(c)(2), that title was already included in the codification." *Montgomery*, 2021 WL 6134591, at *15 (citing 18 U.S.C. § 1512 (2000)). "The title of the section of the legislation that added Section 1512(c), in contrast, was 'Tampering with a record *or otherwise impeding an official proceeding*.'" *Id.* (citing Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 1102, 116 Stat. 745, 807 (emphasis added)). As Judge Moss found, "Section 1512(c)(2)'s title in the U.S. Code is unenlightening, and the title under which it was enacted arguably supports a broader reading of the statute." *Id.*

Defendant's argument finds no textual support when applied to Section 1515(a)(1)(B), moreover, which speaks broadly of a proceeding "before the Congress." Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting, it needed look only a few provisions away to 18 U.S.C. § 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency. Further, Section 1505 expressly criminalizes obstruction of "any inquiry or investigation [that] is being had by" Congress, including by congressional committees and subcommittees. 18 U.S.C. § 1505; *see United States v. Bowser*, 964 F.3d 26, 31 (D.C. Cir. 2020). If Congress wished to limit the obstruction prohibition under Section 1505 to congressional investigations, it could have done so in the text of Section 1515(a)(1)(B). *See Russello v. United States,* 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.") But "Congress did not select this narrow construct when

21

it enacted section 1512(c)." *Caldwell*, 2021 WL 6062718, at *5. Instead, Congress enacted broader language— "a proceeding before the Congress"—to cover a broader range of proceedings than the "inquir[ies] and investigation[s]" envisioned in Section 1505. "That Congress decided to incorporate into section 1512(c) an existing definition of 'official proceeding' that broadly includes 'a proceeding before Congress,' as opposed to one limited to its 'power of inquiry,' is therefore consequential." *Id.*

Fischer argues that other provisions in Chapter 73 relate to the administration of justice, such as 18 U.S.C. § 1503 (influencing or injuring a juror), and that Section 1512(c)(2) should be similarly limited. Mot. at 19. This only proves the government's point: Congress knows how to draft statutes that relate to the administration of justice, and it did not do so here. Even *Yates v. United States,* 574 U.S. 528 (2015), upon which defendant relies, contradicts his argument: the *Yates* plurality observed that Section 1512(c)'s placement within chapter 73 was consistent with its role as a "broad proscription" on obstructive acts, not a narrowed reading. *Yates,* 574 U.S. at 541 (plurality opinion).

Fischer's arguments cannot overcome the plain and unambiguous meaning of the statute. The broader reference to a "proceeding before the Congress" in Section 1515 includes the Electoral College vote certification. All the courts in this district who have recently considered the issue have so held. *See, e.g., Caldwell*, 2021 WL 6062718 at *5 ("Congress did not intend to limit the congressional proceedings protected under section 1512(c) to only those involving its adjudicatory, investigative, or legislative functions. And the court will not add a requirement to the statute that Congress did not see fit to include."); *Sandlin*, 2021 WL 5865006, at *4 ("[T]he Court will not read an "administration of justice" requirement into "official proceeding.").[6]

---

[6] Moreover, "even if there were a quasi-adjudicative or quasi-judicial requirement, the

**4.** ***Yates v. United States*** **and legislative history do not limit the meaning of Section 1512(c)(2) to proceedings involving document destruction or "the administration of justice"**

The defendant relies on flawed legislative history and misreads *Yates v. United States* to argue that the Electoral College vote is not an "official proceeding" under the misguided belief that Section 1512(c), in its entirety, is aimed at "preventing corporations from destroying records relevant to a federal hearing related to the administration of justice." Mot. at 17–19. Defendant again errs by avoiding Section 1515's text. To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). In ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is "a proceeding before the Congress." Because Section 1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete." *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted). And because construing Section 1512(c)(2) to reach defendant's conduct would neither "frustrate Congress's clear intention" nor "yield patent absurdity," this Court's "obligation is to apply the statute as Congress wrote it." *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (internal quotation marks omitted). The defendant offers no rationale for looking past the statute's plain text to reach for other interpretive tools. *See McHugh,* 21-cr-453, ECF No. 51, at 16 (declining to use "vague notions of a statute's basic purpose" or Congress's "expectations" to impose an "extra-textual limitation" on the actual text of Section 1515 and 1512(c)(2)).

One of those tools is legislative history, which should be given little weight here, and which defendant mischaracterizes, in any event. Fischer quotes from the Senate Judiciary Committee's

---

certification would 'pass the test.'" *Nordean,* 2021 WL 6134595, at *12. The certification is "one of the very few congressional proceedings that actually is adjudicative." *McHugh,* 21-cr-453, ECF No. 51, at 17.

description of the "Act's purpose," as punishing persons "who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations," Mot. at 17 (quoting S. Rep. No. 107-146, at 2 (2002)), but fails to mention that the version of the legislation the committee was discussing did not include Section 1512(c)(2) (which was added two months after the act was reported out of committee, as a floor amendment). *Montgomery,* 2021 WL 6134591, at *15–*16 (citing 148 Cong. Rec. S6542 (daily ed. July 10, 2002)). Relatedly, Fischer argues that "nothing in the legislative history" supports that Section 1512(c)(2) applies to "the disruption of a ceremony before Congress by persons engaged in a political rally," Mot. at 17, but he fails to mention that the legislative history regarding Section 1512(c)(2), regarding *any of its applications,* is scant in general and of little value here, given that Section 1512(c)(2) was not added until after the bill was reported out of committee. *See Montgomery,* 2021 WL 6134591, at *15 (observing that "[b]ecause Section 1512(c)(2) did not originate in a committee, there is little legislative history that sheds light on the purposes of that particular provision. And what little history exists should not be given much weight").[7] After Senator Lott offered the floor amendment that included Section 1512(c), Senator Hatch observed that the legislation "broaden[ed]" Section 1512 by permitting prosecution of "an individual who acts alone in destroying evidence." 148 Cong. Rec. S6550 (daily ed. July 10, 2002) (statement of Sen. Hatch). This passing reference is not a basis to limit the statute.

Relying on the Supreme Court's decision in *Yates,* Fischer also contends that Section 1512(c)(2) targets only "corporate malfeasance" and is "aimed at preventing corporations from destroying records relevant to a federal hearing related to the administration of justice." Mot. at

---

[7] The only discussion of Section 1512 in the Senate Judiciary Committee Report, for example, relates to limitations under the pre-existing prohibition in Section 1512(b), which made it a crime to induce "another person to destroy documents, but not a crime for a person to destroy the same documents personally." S. Rep. No. 107-146, at 6–7.

17–18. As Judge Moss recently found, *Yates* is "inapt." *Montgomery,* 2021 WL 6134591, at *13–

*15 (distinguishing *Yates*). The statute at issue in *Yates* was 18 U.S.C. § 1519, which prohibits

altering, destroying, and concealing records, documents, and tangible objects. *See Yates*, 574 U.S.

at 532 (plurality opinion). *Yates* held that the term "tangible object" as used in Section 1519

included only an object "used to record or preserve information," and thus did not encompass the

undersize red grouper that the defendant in *Yates* had discarded. *Id.* In reaching that conclusion,

the plurality compared Section 1519 with Section 1512(c)(1), which similarly prohibits altering,

destroying, or concealing evidence in connection with an official proceeding. Congress enacted

both Sections 1519 and 1512(c) as part of the Sarbanes-Oxley Act of 2002, 116 Stat. 745, but

drafted Section 1512(c)(1) to reach more broadly than Section 1519. *See Yates*, 574 at 543–45; *see*

*also id.* at 545 n.7 ("Congress designed § 1519 to be interpreted apart from § 1512, not in lockstep

with it."); *Caldwell*, 2021 WL 6062718 at *15–*18 (rejecting defendants' arguments that *Yates*

narrows the reach of Section 1512(c) based, in part, on the statute's legislative history, title, and

placement within Chapter 73 of Title 18)).

The statute with which the defendant is charged, Section 1512(c)(2), expands the

obstruction prohibition beyond the focus on document destruction in Sections 1519 and Section

1512(c)(1). *See United States v. Ring*, 628 F. Supp. 2d 195, 225 (D.D.C. 2009) ("[Section]

1512(c)(2)'s application is not limited to the destruction of documents."). Its application to a

defendant who "corruptly . . . otherwise obstructs, influences, or impedes any official proceeding,"

§ 1512(c)(2), "operates as a catch-all to cover otherwise obstructive behavior that might not

constitute a more specific offense like document destruction, which is listed in (c)(1)." *United*

*States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (affirming conviction under Section 1512(c)(2)

for false statements) (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014)).

Courts have repeatedly upheld its application to obstructive acts that reach beyond the impairment of financial records. *See id.* (collecting cases concerning violations of Section § 1512(c)(2) by virtue of the use of false statements); *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (upholding conviction under Section 1512(c)(2) for disclosing the identity of an undercover federal agent to thwart a grand jury investigation); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (upholding conviction under Section 1512(c)(2) for providing false testimony to a grand jury); *United States v. Cervantes*, No. 16-10508, 2021 WL 2666684, at *6 (9th Cir. June 29, 2021) (upholding conviction under Section 1512(c)(2) for the burning of building to conceal two bodies of murder victims).

Moreover, to the extent that Fischer suggests that the outcome in *Yates* was dictated by the general purpose of the Sarbanes-Oxley Act (to stem "corporate and accounting deception and cover-ups"), Mot. at 18, that is incorrect: the plurality used a range of tools of construction to narrow the statute at issue, of which legislative history was only one, and Justice Alito, the decisive fifth vote, did not refer to Sarbanes-Oxley's purpose at all.[8] As Judges Mehta and Moss have recently explained, the contextual features, including legislative history, that influenced the *Yates* plurality to narrow Section 1519, are absent in Section 1512(c)(2). *See Caldwell,* 2021 WL 6062718, at *15–*18; *Montgomery,* 2021 WL 6134591, at *13–*18.

Furthermore, while Section 1512(c) may have been enacted due to concerns over document destruction and corporate malfeasance, "[s]tatutes often reach beyond the principal evil that

---

[8] Under the rule announced in *Marks v. United States*, 430 U.S. 188 (1977), Justice Alito's narrower concurrence represents the binding holding as the narrowest opinion among those concurring in the judgment. *See id.* at 193. In *Yates,* Judge Alito relied on "the statute's list of nouns, its list of verbs, and its title," but did not discuss the purpose of the Sarbanes-Oxley Act. *See* 574 U.S. at 549. Fischer thus errs by suggesting that the plurality's reasoning in *Yates*, such as its reference to the purpose of the Sarbanes-Oxley Act, is binding. *See* ECF No. 54, at 18 (citing plurality opinion).

animated them." *Sandlin,* 2021 WL 5865006, at *9 (finding that Section 1512(c)(2) may apply to defendants who attempted to stop the certification of the Electoral College on January 6, 2021); *see also Mostofsky*, 2021 WL 6049891 at *11 (rejecting defendant's argument that Section 1512 only applies to conduct similar to document destruction and explaining that the defendant's position "would have the Court ignore the plain meaning of the words contained in (c)(2)—to wit, 'obstructs, influences, or impedes'—which cannot be read so narrowly. The use of 'otherwise' is better understood as 'clarif[ying] that the latter prohibits obstruction by means *other than* document destruction.'") (emphasis in original); *Caldwell*, 2021 WL 6062718 at * 14 ("The natural reading of the two sections is that section 1512(c)(2) 'operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific offense like document destruction'").

### 5.   Defendant's violation of multiple statutes does not bar a prosecution under Section 1512(c)(2)

The defendant suggests (Mot. at 20) that, to the extent his role in interfering with the Electoral College vote certification warranted prosecution, he should only have been charged with violations of 18 U.S.C. § 231 and 40 U.S.C. § 5104 because his actions interfered with a "federally protected function" and "official business of Congress," not an "official proceeding." In his view, charging him under 18 U.S.C. §1512 as well is "overkill." Mot. at 20. This claim is meritless. First, each of the offenses that he cites contains different elements that the Government must prove beyond a reasonable doubt. Moreover, the mere fact that multiple criminal statutes apply to an individual's conduct does not render prosecution under one (or more) of those statute suspect; indeed, "overlap" is "not uncommon in [federal] criminal statutes." *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014); *accord Hubbard v. United States*, 514 U.S. 695, 714 n.14 (1995) (opinion of Stevens, J.) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct."); *see also United States v. Batchelder*, 442 U.S. 114,

123 (1979) ("So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.").

**B.    18 U.S.C. § 1512(c)(2) is not unconstitutionally vague and the defendant had fair notice that his actions are punishable under 18 U.S.C. § 1512(c)(2)**

The defendant argues (Mot. at 21–27) that Section 1512(c) is unconstitutionally vague because of the terms "otherwise," "corruptly," and "official proceeding." Again, several other judges in this district have recently rejected this same argument. *Sandlin,* 2021 WL 5865006, *Caldwell*, 2021 WL 6062718, *Mostofsky*, 2021 WL 6049891; *Montgomery,* 2021 WL 6134591; *Nordean,* 2021 WL 6134595; *McHugh,* 21-cr-453, ECF No. 51, at 19–28. The void for vagueness doctrine, described above in Section I(A), *supra*, is narrow, and does not apply here, where the statute gives Fischer fair notice and is not "so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595.

**1.    The "otherwise" catch-all clause is not unconstitutionally vague as applied here.**

The defendant argues that the "otherwise" in Section 1512(c)(2) ("otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so") makes the statute unconstitutionally vague. Mot. at 21. It does not. "Section 1512(c)(2) gives defendants fair warning in plain language that a crime will occur in a different ("otherwise") manner compared to § 1512(c)(1) if the defendant 'obstructs, influences, or impedes any official proceeding' without regard to whether the action relates to documents or records." *Sandlin,* 2021 WL 5865006, at *5 (quoting *United States v. Petruk*, 781 F.3d 438, 446–47 (8th Cir. 2015) (emphasis added)).

Section 1512(c) consists of two provisions, which both require the defendant to act "corruptly" and are separated by both a semicolon and line break. First, Section 1512(c)(1) criminalizes "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official

28

proceeding." Section 1512(c)(2), by contrast, applies more generally to any acts that "otherwise obstruct[], influence[], or impede[]" an official proceeding. The term "otherwise," consistent with its ordinary meaning, conveys that Section 1512(c)(2) encompasses misconduct that threatens an official proceeding "beyond [the] simple document destruction" that Section 1512(c)(1) proscribes. *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013); *Petruk*, 781 F.3d at 446–47 (noting that "otherwise" in Section 1512(c)(2), understood to mean "in another manner" or "differently," implies that the obstruction prohibition in that statute applies "without regard to whether the action relates to documents or records") (internal quotation marks omitted); *see also Ring*, 628 F. Supp. 2d at 224 n.17 (noting that Section 1512(c)(2) is "plainly separate and independent of" Section 1512(c)(1), and declining to read "otherwise" in Section 1512(c)(2) "as limited by § 1512 (c)(1)'s separate and independent prohibition on evidence-tampering"); *Otherwise*, Oxford English Dictionary, *available at* http://www.oed.com (defining otherwise as "in another way" or "in any other way"); *see also Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004) (construing "otherwise" in 28 U.S.C. § 2466 (1)(C) to reach beyond the "specific examples" listed in prior subsections, thereby covering the "myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of a court").

In this way, Section 1512(c)(2) criminalizes the same *result* prohibited by Section 1512(c)(1)—obstruction of an official proceeding—when that result is accomplished by a different *means, i.e.*, by conduct other than destruction of a document, record, or other object. *Cf. United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir. 1978) (explaining that 18 U.S.C. § 1503, which criminalizes the result of obstructing the due administration of justice, provides specific means of accomplishing that result and then a separate catch-all clause designed to capture other means). Section 1512(c)(2) "operates as a catch-all to cover otherwise obstructive behavior that might not

constitute a more specific" obstruction offense involving documents or records under Section 1512(c)(1). *Petruk*, 781 F.3d at 447 (quoting *Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014); *cf. United States v. Aguilar*, 515 U.S. 593, 598 (1995) (describing similar "[o]mnibus" clause in 18 U.S.C. § 1503 as a catchall that is "far more general in scope than the earlier clauses of the statute").

Defendant's citation to *Johnson* does not demonstrate that "otherwise" is vague here. Mot. at 21–22 (quoting *Johnson,* 576 U.S. at 591). *Johnson* invalidated the residual clause of the Armed Career Criminal Act (ACCA) (which enhanced a sentence if a defendant's conduct "otherwise involved conduct that presented a serious potential risk of physical injury to another"), but not because it included the term "otherwise." Rather, the Court decided that applying the categorical approach to determine whether a hypothetical crime "involves conduct" that at some point created a "risk of injury," as the residual clause required, was too indeterminate. 576 U.S. at 596–97. Concerns about the application of the categorical approach are inapposite here.

## 2.     The word "corruptly" is not unconstitutionally vague as applied here.

Section 1512(c)(2) applies only where an individual "corruptly" performs one of the enumerated acts. Fischer argues that the term "corruptly" is unconstitutionally vague. ECF No. 55 at 22–25. As judges on this Court have recognized, that argument is without merit. *See Caldwell,* 2021 WL 6062718, at *8–*13; *Sandlin*, 2021 WL 5865006 at *10–14; *Mostofsky*, 2021 WL 604891 at *11; *Montgomery,* 2021 WL 6134591 at *18–*22; *Nordean,* 2021 WL 9134595, at *9.[9]

The defendant relies on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), which addressed a separate statute, 18 U.S.C. § 1505, that prohibited "corruptly" obstructing a congressional inquiry. *Poindexter* is inapposite, and does not show that Section 1512(c)(2) is vague

---

[9] While each of the cited opinions provides persuasive analysis, *Montgomery* is notable because the indictment at issue, like the one here, was not a speaking indictment. *Montgomery,* 2021 WL 6134591, at *18–*22.

as applied here, as Judge Mehta explained in depth in *Caldwell*.[10] *See Caldwell*, 2021 WL 60626718, at *8–*11. First, the D.C. Circuit narrowly confined *Poindexter*'s analysis to Section 1505's use of "corruptly," and expressly declined to hold "that term unconstitutionally vague as applied to all conduct." 951 F.2d at 385. Five years later, in *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996), the D.C. Circuit rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b) and affirmed the conviction of a defendant for "corruptly" influencing the testimony of a potential witness at trial. *Id*. at 629–30. Moreover, "[i]n the 30 years it has been on the books, courts have not applied *Poindexter* widely to render impotent the many obstruction statues that use the word 'corruptly.' Rather . . . courts have recognized 'the narrow reasoning used in *Poindexter*' and 'cabined that vagueness holding to its unusual circumstances.'" *Nordean,* 2021 WL 6134595, at *10 (quoting *United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017)); *see also, e.g*., *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (rejecting vagueness challenge to "corruptly" in 26 U.S.C. § 7212(a)); *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998) (same for 18 U.S.C. § 1512(b)); *United States v. Brenson*, 104 F.3d 1267, 1280 (11th Cir. 1997) (same for 18 U.S.C. § 1503). They have not "read *Poindexter* to mean, as Defendants seem to urge, that the term 'corruptly' in any obstruction statute is fatally vague." *Caldwell*, 2021 WL 6062718, at *9.

*Poindexter* also predated the Supreme Court's decision in *Arthur Andersen v. United States*, 544 U.S. 696 (2005). There, the Court explained the terms "'[c]orrupt' and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil." *Id*. at 705 (citation omitted). In

---

[10] *Poindexter* was also superseded in significant part by the False Statements Accountability Act of 1996, Pub. L. No. 104-292, 110 Stat. 3459. As codified at 18 U.S.C. § 1515(b), the Act provides that the term "corruptly" in § 1505 "means acting with an improper purpose, *personally or by influencing another*, including making a false or misleading statement." (Emphasis added.)

doing so, the Court "did not imply that the term was too vague." *Edwards*, 869 F.3d at 502.

Courts have encountered little difficulty when addressing Section 1512(c)'s elements following *Arthur Andersen. See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing"); *United States v. Matthews*, 505 F.3d 698, 706 (7th Cir. 2007) (upholding instruction defining "corruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512 ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice."); *see also Mostofsky, supra,* at 23 ("corruptly" requires that a defendant act "'unlawfully, and with the intent to obstruct[,]' impede, or influence an official proceeding") (citing *Sandlin, supra,* at 26); *Caldwell, supra,* at 23 (noting that, "at the very least," corruptly "requires Defendants to have acted with consciousness of wrongdoing"). The reach of the term "corruptly" in Section 1512(c)(2) is also limited by the "nexus" requirement, namely, that the "the obstructive conduct be connected to a specific official proceeding." *United States v. Young*, 916 F.3d 368, 386 (4th Cir.), *cert. denied*, 140 S. Ct. 113 (2019) (citation omitted). Such efforts demonstrate that the statute's "corruptly" element does not invite arbitrary or wholly subjective application by either courts or juries.

### 3.   The word "official proceeding" is not unconstitutionally vague as applied here.

The defendant further contends (Mot. at 21–23) that the Court must speculate as to the meaning of the term "official proceeding" in Section 1512(c). As explained above, no indeterminacy exists. The Joint Session of Congress qualifies as an "official proceeding" under both the "lay" and "legal" definitions of the term. *See* Section (I)(C)(1)(ii), *supra*. It also contains

the necessary "adjudicatory" features to satisfy the defendant's extra-textual construction. For that

reason, Section 1512(c) provided him with more than "a fair warning … of what the law intends

to do if a certain line [was] passed" on January 6, 2021. *Arthur Andersen*, 544 U.S. at 703 (citation

omitted); *see also Caldwell*, 2021 WL 6062718 at *7 (rejecting vagueness challenge to the term

"official proceeding"). "It is difficult to fathom that a reasonable person would not believe the

Electoral College certification was an official proceeding . . . ; indeed, this is precisely the reason

why the January 6 rioters wished to stop it." *Mostofsky*, 2021 WL 6049891, at *11.

### 4.   The exercise of prosecutorial discretion does not render a statute vague

Fischer singles out five January 6 defendants charged with violations of Section 1512 (out

of hundreds) and argues that their cases "illustrate[] how vague and arbitrary the enforcement of

the statute can be." Mot. at 24. Defendant's effort is flawed, and several courts in this district have

recently rebuffed similar invitations to compare charging decisions as part of the vagueness

inquiry. *See Montgomery,* 2021 WL 6134591, at *22; *Caldwell*, 2021 WL 6062718, at *8;

*Nordean,* 2021 WL 6134595 at *12. "Discretionary prosecutorial decisions cannot render vague

as applied a statute that by its plain terms provides fair notice." *Caldwell*, 2021 WL 6062718 at

*8; see also *Montgomery,* 2021 WL 6134591, at *22 ("the presence of enforcement discretion

alone does not render a statutory scheme unconstitutionally vague") (quoting *Kincaid v. District

of Columbia*, 854 F.3d 721, 729 (D.C. Cir. 2017) (Kavanaugh, J.)). The vagueness doctrine asks

whether "*the statute* … provide[s] a person of ordinary intelligence fair notice of what is

prohibited." *Williams*, 553 U.S. at 304 (emphasis added). The defendant cites no authority, and the

government has found none, showing that charging decisions postdating the offense have any

bearing on this inquiry.

While the Court need not delve into the specifics of defendant's five citations, they do not

suggest that 1512(c)(2) is arbitrary. There is no indication that any of the defendants lacked the

intent to "corruptly"—through wrongdoing, whether by violence, force, or other means—obstruct, interfere with, and impede the certification of the Electoral College vote count. Their obstructive methods varied: some defendants assaulted officers outside the Capitol while others entered the Senate Chamber and rifled through Senators' paperwork. But such factual distinctions lack salience under the statute. Each type of conduct "corruptly" "obstruct[ed], influence[d], or impede[d]" a proceeding before Congress, and accordingly, comes within the statute's scope. 18 U.S.C. § 1512(c). The fact that a criminal statute could encompass varied fact patterns is hardly unusual: take the wire and mail fraud statutes, for example.

Fischer further states, "the government does not specify what 'influence' these defendants had or how exactly they 'impeded.'" Mot. at 26. But the government does not have to describe in the charging instrument how it will prove the elements at trial. *See United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) (*en banc*) ("[N]either the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed."). The question here is whether Section 1512(c)'s text provided the defendant with adequate notice.

Finally, the Court should reject Fischer's contention that the indictment is vague as applied to him because, whatever the "uncertainty around the edges," *Edwards*, 869 F.3d at 502, Section 1512(c)'s "corruptly" element provided ample notice to Fischer that *this conduct* was criminal. "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974). Fischer is accused of multiple felonies for his conduct during the January 6 Capitol riot. His "conduct on January 6th was just as independently unlawful and thus just as obviously covered by § 1512(c)(2)." *McHugh*, 21-cr-453, ECF No. 51, at 26.[11]

---

[11] The indictment at issue in *McHugh*, like the superseding indictment here, was not a speaking

IV.   **The Court Should Deny Fischer's Motion to Dismiss Counts Four and Five, Alleging Violations of 18 U.S.C. § 1752**

Counts Four and Five allege violations of Section 1752 of Title 18, which prohibits the unlawful entry into and disruptive or disorderly conduct in a "restricted buildings or grounds." A "restricted building or grounds" is a "posted, cordoned off, or otherwise restricted area…where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). At the time the defendant entered the U.S. Capitol on January 6, 2021, the Vice President was present. The defendant's conduct accordingly falls within the Section 1752's plain sweep because he unlawfully entered a restricted building while the Vice President was "temporarily visiting," as alleged in the superseding indictment.

A.   **The Vice President can "temporarily visit" the U.S. Capitol**

Contrary to Section 1752's plain terms, purpose, and structure, defendant argues that Vice President Pence cannot "temporarily visit" the U.S. Capitol because he has an office there. Mot. at 29–40. He claims that his is the commonsense reading of the statute, but he is wrong, as Judge Bates recently held. *McHugh,* 21-cr-453, ECF No. 51, at 42–47 (reaching "a commonsense conclusion: the Vice President was 'temporarily visiting' the Capitol").

As noted above, to determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin*, 568 U.S. at 513 (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). The verb "visit" means, *inter alia,* "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee."[12]

---

indictment. Judge Bates nevertheless concluded that McHugh's conduct was "squarely within the core coverage of 'corruptly' as used in 18 U.S.C. § 1512(c)(2)." *McHugh,* 21-cr-453, ECF No. 51, at 26 (citation omitted).

[12] https://www.merriam-webster.com/dictionary/visit

Either definition describes the Secret Service protectee's activities on January 6. Vice President Pence was physically present at the U.S. Capitol for a particular purpose: he presided over Congress's certification of the 2020 Presidential Election, first in the joint session, and then in the Senate chamber. While not specifically alleged in the indictment, two other Secret Service protectees (members of the Vice President's immediate family), also came to the U.S. Capitol that day for a particular purpose: to observe these proceedings. Furthermore, as President of the Senate, Vice President Pence oversaw the vote certification. Given the presence of the Vice President (and his family members), the U.S. Capitol plainly qualified as a building where "[a] person protected by the Secret Service [was] … temporarily visiting." 18 U.S.C. § 1752(c)(1)(B).

The defendant emphasizes Section 1752's use of the term "temporarily" and cites cases where either the President or Vice President were "traveling *outside* of the District of Columbia 'visiting' that area for a 'temporary' purpose." Mot. at 30. Section 1752, however, does not impose a requirement that the location being temporarily visited be outside of the District of Columbia. Second, the visit to the U.S. Capitol *was* temporary: Vice President Pence (and his family) had traveled to the U.S. Capitol to oversee and attend the Joint Session of Congress—a proceeding of limited duration. At the close of the proceeding, they left—confirming the "temporary" nature of their visit. *See McHugh,* 21-cr-453, ECF No. 51, at 43 (citing various dictionary definitions of "temporary" as "for a limited time" and finding that the Vice President can "temporarily visit" the U.S. Capitol).

The defendant offers two further observations—both irrelevant. First, he notes that Vice President Pence "lived and worked" in the District of Columbia. Mot. at 29. But Section 1752(c)(1)(B) defines the restricted area by reference to "buildings or grounds," not municipal borders. That Vice President Pence lived and worked in Washington, D.C. does not detract from

the fact that he "temporarily visit[ed]" the U.S. Capitol on January 6. "Simply being in the visitor's hometown does not mean a place cannot be 'visited.'" *McHugh,* 21-cr-453, ECF No. 51, at 44. Second, the defendant stresses that Vice President Pence had a permanent U.S. Capitol office. *Id*. Section 1752(c)(1)(B), however, defines the restricted area by reference to the location of the protectee—not his office. When Vice President Pence traveled to the U.S. Capitol on January 6 to oversee the Joint Session of Congress, he was "visiting" the building. And because Vice President Pence intended to leave at the close of the session, this visit was "temporar[y]." Moreover, the U.S. Capitol is not the Vice President's regular workplace; even if "there is some carveout in § 1752 for where a protectee normally lives or works, it does not apply to Vice President Pence's trip to the Capitol on January 6, 2021." *McHugh*, 21-cr-453, ECF No. 51, at 46.

Such a "carveout," taken to its logical end, would undermine the government's ability to protect the President and Vice President by deterring and punishing individuals who seek unauthorized access to the President's or Vice President's location. It would restrict Section 1752(c)(1)(B)'s application to only locations outside the District of Columbia—on the view that any visit by the President or Vice President to a location within municipal limits cannot be "temporary" because they reside in the District of Columbia. Second, under the defendant's construction, Section 1752(c)(1)(B) would not apply where the President or Vice President temporarily stayed at their permanent residences in Delaware or California—on the view that such a trip would not qualify as "visiting." Nor would it apply to Camp David, where there is a presidential cabin and office. In another strange scenario, a restricted area could exist when, as here, the Vice President's family visits the Capitol (because they are Secret Service protectees without an office there), but not when the Vice President does, affording a higher level of protection for the family of the elected official than to the elected official himself (or herself). No

support exists for the defendant's effort to insert such large and irrational exceptions into the statute's sweep. *See Lovitky v. Trump*, 949 F.3d 753, 760 (D.C. Cir. 2020) (noting that courts will avoid a "statutory outcome … if it defies rationality by rendering a statute nonsensical or superfluous or if it creates an outcome so contrary to perceived social values that Congress could not have intended it") (citation omitted).

The defendant's position also defies Section 1752's clear purpose. *Cf. Genus Med. Techs. LLC v. United States Food & Drug Admin.*, 994 F.3d 631, 637 (D.C. Cir. 2021) ("[I]f the text alone is insufficient to end the inquiry, we may turn to other customary statutory interpretation tools, including structure, purpose, and legislative history.") (internal quotation marks and citation omitted). In drafting Section 1752, Congress sought to protect "not merely the safety of one man, but also the ability of the executive branch to function in an orderly fashion and the capacity of the United States to respond to threats and crises affecting the entire free world." *United States v. Caputo*, 201 F. Supp. 3d 65, 70 (D.D.C. 2016) (quoting *White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1528 (D.C. Cir. 1984)). To that end, the statute comprehensively deters and punishes individuals who seek unauthorized access to the White House grounds and the Vice President's residence—fixed locations where the President and Vice President live and work, 18 U.S.C. 1752(c)(1)(A); and also any other "building or grounds" where they (or other protectees) happen to be "temporarily visiting," 18 U.S.C. 1752(c)(1)(B). Reading Sections 1752(c)(1)(A) and 1752(c)(1)(B) together protects the President and Vice President in their official homes and wherever else they go. Interpreting the statute as the defendant suggests would create a gap in Section 1752's coverage by removing areas, such as the U.S. Capitol, from protection. It could expose the leaders of the Executive Branch even as they perform their official duties. That gap is both illogical and contrary to the statutory history of Section 1752, where, "at every turn,"

Congress has "*broadened* the scope of the statute and the potential for liability." *Griffin,* 2021 WL 2778557, at *5 (D.D.C. July 2, 2021).

All the relevant metrics—plain language, statutory structure, and congressional purpose— foreclose the defendant's crabbed reading of Section 1752(c)(1)(B). This Court should reject it. The defendant's cited cases—involving either an arrest or conviction under Section 1752—do not discuss the "temporarily visiting" language. Mot. at 29–30 (citing *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005); *United States v. Junot,* 1990 WL 66533 (9th Cir. May 18, 1990) (unpublished); *Blair v. City of Evansville, Ind.,* 361 F. Supp.2d 846 (S.D. Ind. 2005)). They lack relevance to the present dispute.

**B.      18 U.S.C. § 1752 does not require the government to prove that the restricted area was restricted at the Secret Service's direction**

The defendant argues that because the Capitol Police, not the Secret Service, barricaded the area around the Capitol, he should not be charged with violating 18 U.S.C. § 1752(a)(1) and (2). Mot. at 30–31. Courts in this district have rightly rejected this contention. *See Griffin*, 2021 WL 2778557; *Mostofsky*, 2021 WL 6049891, at *12–*13, *Nordean,* 2021 WL 6134595, at *18; *McHugh,* 21-cr-453, ECF No. 51, at 38–40.

In relevant part, 18 U.S.C. § 1752 ("Restricted building or grounds") criminalizes:

(a)  Whoever—

(1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so;
(2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

(c) In this section—

> (1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—
>> (A) of the White House or its grounds, or the Vice President's official residence or its grounds;
>> (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
>> (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.
> (2) the term "other person protected by the Secret Service" means any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection.

18 U.S.C. § 1752. In short, Section 1752 prohibits the unlawful entry into a restricted or otherwise cordoned off area where "a person protected by the Secret Service is or will be temporarily visiting." *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 98 (D.D.C. 2019), *aff'd* 831 F. App'x 513 (D.C. Cir. 2021). Section 1752 therefore "focuses on perpetrators who knowingly enter a restricted area around a protectee, not on how it is restricted or who does the restricting." *Griffin*, 2021 WL 2778557, at *6.

As previously mentioned, to determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin*, 568 U.S. at 513 (quoting *Moskal*, 498 U.S. at 108); *see also Pub. Investors Arbitration Bar Ass'n v. S.E.C.*, 930 F. Supp. 2d 55 (D.D.C. 2013) (Howell, J.). Here, the plain text of the statute is "unambiguous," so the "judicial inquiry is complete." *Babb*, 140 S. Ct. at 1177. Section 1752's text is clear. It proscribes certain conduct in and around "any restricted building or grounds." *See* 18 U.S.C. § 1752(a). The statute provides three definitions for the term "restricted buildings and grounds," *see* § 1752(c)(1), including "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting," § 1752(c)(1)(B). Through a cross-reference, Section 1752 makes clear—and the defendant does not appear to dispute—that "person[s] protected by the Secret Service" includes the Vice President. §

40

1752(c)(2); *see* § 3056(a)(1).

That straightforward analysis has a straightforward application to the facts alleged in the defendant's case. The superseding indictment alleges that a protected person (the Vice President) was present inside the Capitol building or on the Capitol grounds, and that some portion of the Capitol building and grounds was posted, cordoned off, or otherwise restricted—making it a "restricted building or grounds" under § 1752(c)(1). In short, the allegations closely track the statutory language.

The defendant urges the Court to import an extra-textual requirement that the Secret Service be required to designate the restricted area. Mot. at 30–31. That is so, the defendant claims, because it is the Secret Service who protects the President and others, so it is the Secret Service who must make the designation of a restricted area. Section 1752 is directed not at the Secret Service, however, but at ensuring the protection of the President and the office of the Presidency. *See* S. Rep. 91-1252 (1970); *see also* Elizabeth Craig, *Protecting the President from Protest: Using the Secret Service's Zone of Protection to Prosecute Protesters*, 9 J. Gender Race & Just. 665, 668–69 (2006). "Indeed, the only reference in the statute to the Secret Service is to its protectees. Section 1752 says nothing about who must do the restricting." *Griffin*, 2021 WL 2778557, at *7; *see also Mostofsky*, 2021 WL 6049891 at *13 ("The text plainly does not require that the Secret Service be the entity to restrict or cordon off a particular area."). "If Congress intended a statute designed to safeguard the President and other Secret Service protectees to hinge on who outlined the safety perimeter around the principal, surely it would have said so." *Griffin,* 2021 WL 2778557, at *6. Fischer's reading would have the Court create a "potentially massive procedural loophole" from the statute's "silence." *McHugh,* 21-cr-453, ECF No. 51, at 40. The Court should not do so.

Statutory history also undercuts the defendant's argument. *See id.*, at *4–*5 (explaining

how Congress has consistently "*broadened* the scope of the statute and the potential for liability").

While the earlier version of Section 1752 also did not say who must restrict a building or grounds,

it did incorporate regulations promulgated by the Department of the Treasury (which at the time

housed the Secret Service) governing restricted areas. *Id*. Fischer falsely conflates the Treasury's

Department's authority to promulgate certain regulations with a requirement that the Secret

Service cordon off areas; but, even so, Congress subsequently struck subsection (d) and did not

replace it with language limiting the law enforcement agencies allowed to designate a restricted

area. Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 192 (Mar. 9, 2006). Its decision in 2006 to

eliminate reference to the Treasury Department (without replacing it with the Department of

Homeland Security, which currently houses the Secret Service) indicates that the statute no longer

depends (if it ever did) on whether the Secret Service has defined an area as "restricted."[13]

Moreover, Fischer's reading of the statute, which would require the Secret Service to "cordon off"

a private residence, "no matter how secure the location or how imposing the preexisting walls,"

leads to "pressing absurdities." *Griffin*, 2021 WL 2778557 at *6. Counts Four and Five are sound.

## V.   The Indictment Satisfies the Notice and Presentment Requirements

Finally, Fischer asserts the indictment is deficient because it "lacks *any* specifics regarding

the alleged acts or circumstances and contains only conclusory allegations." Mot. at 32–33. Once

again, Fischer's claim is without merit. An indictment is sufficient if it contains the elements of

the charged offense and enough detail to allow a defendant to prepare a defense and invoke the

---

[13] Defendant claims that "legislative history" supports his reading of Section 1752, but never explains what that legislative history is. Mot. at 30. *Griffin* rejected an argument that references to the Secret Service in the legislative history suggested that it must do the restricting because Section 1752 is not a "regulatory statute" directed to the agency. *Griffin*, 2021 WL 2778557, at *4. In any event, because Section's statutory text is clear, "there is no reason to resort to legislative history." *Id.* (quoting *United States v. Gonzales*, 520 U.S. 1, 6 (1997)).

Double Jeopardy Clause if necessary. *Hamling v. United States*, 418 U.S. 87, 117–19 (1974); *United States v. Resendiz-Ponce*, 549 U.S. 102, 108–10 (2007)*; United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("the validity of an indictment is not a question of whether it could have been more definite and certain. Rather, to be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense.") (cleaned up).

"[B]y using the statutory language and specifying the time and place of the offense," an indictment provides both "fair notice" and protection against future prosecution. *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (internal quotation omitted). "[N]either the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendant on notice as to every detail considered by the grand jury. Further, indictments 'must be read to include facts which are necessarily implied by the specific allegations made.'" *United States v. Cisneros*, 26 F. Supp. 2d 24, 46 (D.D.C. 1998) (quoting *United States v. Silverman*, 430 F.2d 106, 111–12 (2d Cir. 1970)); *see also United States v. Berger,* 473 F.3d 1080, 1103 (9th Cir. 2007) (explaining that an indictment "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied.").

Following his citations to general Fifth Amendment and due process principles, Fischer's only authority for his attack on the format of the indictment is *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999). But *Du Bo* is inapposite because its indictment failed to allege all elements of the offense. *Id.* at 1179–80 (concluding Hobbs Act charge was fatally flawed where it

failed to "properly allege an offense"). That omission explains the Ninth Circuit's concern for whether the defendant was convicted on the basis of facts "perhaps not even presented to [] the grand jury that indicted him." *Id.* at 1179 (internal quotations omitted). There is no reason to examine what facts the grand jury received in this case, or what facts could have been added to the indictment, because the indictment properly alleges all elements of the charges. Moreover, the charging instruments and disclosures in this case—which Fischer acknowledges in a footnote—make clear what Fischer is charged with doing, which is likely why he did not seek a bill of particulars. Nothing further need be included. Fischer criticizes the January 6 indictments as "assembly-line," but those commonalities result from the tragic fact that the District suffered an unprecedented number of similar crimes during the unlawful assault on the Capitol. It is no sign of insufficiency. Fischer's motion to dismiss fails.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:      /s/ *Alexis J. Loeb*
ALEXIS J. LOEB
Assistant United States Attorney
Detailee
California Bar No. 269895
450 Golden Gate Ave, 11th Floor
San Francisco, CA 94102
Alexis.loeb@usdoj.gov
(415) 436-7168

44