UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

JOSEPH W. FISCHER,

*Defendant*.

Criminal Action No. 1:21-cr-00234 (CJN)

**MEMORANDUM OPINION**

The government alleges that Defendant Joseph Fischer was an active participant in the notorious events that took place at the U.S. Capitol on January 6, 2021. On November 10, 2021, a grand jury returned a Superseding Indictment that charges Fischer with seven different criminal offenses, several of which are felonies. *See* Superseding Indictment, ECF No. 53. Fischer has moved to dismiss Counts One, Three, Four, and Five. *See* Fischer's Motion to Dismiss, ("Def.'s Mot") ECF No. 54. For the reasons stated below, the Court grants in part and denies in part Fischer's motion.

**I.   Legal Standard**

Before trial, a defendant may move to dismiss an indictment on the basis that a "defect in the indictment or information" exists. Fed. R. Crim P. 12(b)(3)(B)(v). "The operative question is whether the allegations, if proven, would be sufficient to permit a jury to" conclude that the defendant committed the criminal offense as charged. *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Courts must assume as true the

1

allegations contained in the indictment—but may rely only on those allegations. *United States v. Akinyoyenu*, 199 F. Supp. 3d. 106, 109–10 (D.D.C. 2016) (citing *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015)). Strict "[a]dherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001).

## COUNT ONE

Count One of the Superseding Indictment charges Fischer with civil disorder in violation of 18 U.S.C. § 231(a)(3).

> On or about January 6, 2021, within the District of Columbia, **JOSEPH W. FISCHER**, committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the lawful performance of his/her official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

18 U.S.C. § 231(a)(3) provides:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function shall be fined under this title or imprisoned not more than five years or both.

Fischer argues that portions of § 231(a)(3) are unconstitutionally vague because the provision's "imprecise and subjective standards fail to provide fair notice and creates significant risk of arbitrary enforcement." Def.'s Mot. at 4–5. Fischer further contends that § 231(a)(3) is unconstitutionally overbroad because "several of the statute's terms are so broad and indefinite as

2

to impose unqualified burdens on a range of protected expression." *Id.* at 5.  In particular, Fischer points to "*any act to obstruct, impede, or interfere with*" as well as "*incident to and during the commission of a civil disorder*" as the problematic components of the civil disorder statute.  *Id.* at 4 (emphasis added).  The Court, joining the company of other judges in this district, rejects these arguments.  *See United States v. Mostofsky*, No. CR 21-138 (JEB), 2021 WL 6049891, at *8 (D.D.C. Dec. 21, 2021) (rejecting an overbreadth challenge to § 231(a)(3)); *United States v. Nordean*, No. CR 21-175 (TJK), 2021 WL 6134595, at *16 (D.D.C. Dec. 28, 2021) (holding that § 231(a)(3) is neither vague nor overbroad); *United States v. McHugh*, No. CR 21-453 (JDB), 2022 WL 296304, at *13 (D.D.C. Feb. 1, 2022) (same).

### A.  18 U.S.C. § 231(a)(3) is not Void for Vagueness

The void-for-vagueness doctrine as currently understood[1] arises from both "ordinary notions of fair play and the settled rules of law." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (quotation omitted).  The doctrine "guarantees that ordinary people have fair notice of the conduct a statute proscribes" and "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Id.* (quotations omitted).  A court will therefore decline to enforce a statute as impermissibly vague if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

---

[1] Some have questioned whether the void-for-vagueness doctrine is consistent with the Due Process Clause, *see Sessions*, 138 S. Ct. at 1242 (Thomas, J., dissenting) ("I continue to doubt that our practice of striking down statutes as unconstitutionally vague is consistent with the original meaning of the Due Process Clause."), but this Court is of course bound to apply the doctrine in its current form.

Section 231(a)(3) criminalizes any "act" or "attempt[ed]" act to "obstruct, impede, or interfere" with a law enforcement officer "lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder." 18 U.S.C. § 231(a)(3). The alleged civil disorder must "in any way or degree obstruct[], delay[], or adversely affect[] commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." *Id.* The statute defines civil disorder as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

The Court concludes that the statute, taken as a whole, is not unconstitutionally vague. Section 231(a)(3) provides sufficient notice of the conduct it prohibits. It prohibits any "act" done "to obstruct, impede, or interfere" with law enforcement responding to a "civil disorder." 18 U.S.C. 231(a)(3). As Judge Kelly has persuasively concluded, "these terms are not dependent on the subjective reaction of others," but are rather subject to "specific fact-based ways to determine whether a defendant's conduct interferes with or impedes others, or if a law enforcement officer is performing his official duties incident to and during a civil disorder." *Nordean*, 2021 WL 6134595 at *16.

Fischer argues that "by penalizing any act to obstruct, impede, or interfere, § 231(a)(3) reaches the outer limits of verbal and expressive conduct without drawing any distinction that could exclude acts undertaken merely to convey a message or symbolic content." Def.'s Mot at 6. But the terms Fischer attacks do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). As Judge Bates has convincingly concluded: "There is a crucial difference between

4

reasonable people differing over the <u>meaning</u> of a word and reasonable people differing over its <u>application</u> to a given situation—the latter is perfectly normal, while the former is indicative of constitutional difficulty." *McHugh*, 2022 WL 296304 at *16.

Fischer further contends that the term "civil disorder, as defined under § 232(1), is extremely far-reaching, applying to any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of . . . injury to the property," and that this "definition of civil disorder offers no limitation to solve the vagueness problem because it could apply to virtually any tumultuous public gathering to which police might be called, not just largescale protests or riots." Def.'s Mot. at 7.  But civil disorder's "fulsome statutory definition" makes plain that to constitute a "civil disorder," the "gathering" must "involve acts of violence" and either cause or "immediate[ly]" threaten bodily injury or property damage." *McHugh*, 2022 WL 296304 at *15 n.22.  The definition, in other words, "limits the application of "civil disorder" to a small (obviously unlawful) subset of "public gatherings." *Id.*

Fischer also claims that "because § 231(a)(3) contains no scienter requirement, . . . it is left to police, prosecutors, and judges to decide whether the statute requires knowledge or specific intent or neither." Def.'s Mot. at 8.  But the contrary is true:  "§ 231(a)(3) is a specific intent statute, criminalizing only acts performed with the intent to obstruct, impede, or interfere with a law enforcement officer." *McHugh*, 2022 WL 296304 at *14.  Even the government acknowledges that the defendant must have acted with intent to violate § 231(a)(3). *See* Gov.'s Br. in Opp'n ("Gov.'s Br."), ECF No. 57 at 9.

All in all, § 231(a)(3) survives Fischer's void-for-vagueness challenge because it provides Fischer with sufficient notice of the conduct it prohibits.

### B. 18 U.S.C. § 231(a)(3) is not Unconstitutionally Overbroad[2]

In the typical case, a litigant bringing a facial constitutional challenge "must establish that no set of circumstances exists under which the [law] would be valid," or the litigant must "show that the law lacks a plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (quotation omitted). Courts treat facial challenges differently in the First Amendment context. In that context, a litigant will succeed on an overbreadth challenge "if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (quotation omitted). Refusing to enforce a statute because of overbreadth concerns is "strong medicine," and courts will refuse to enforce the statute on such grounds "only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973); *see also United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1583 (2020) (Thomas, J., concurring) (noting that it "appears that the overbreadth doctrine lacks any basis in the Constitution's text, violates the usual standard for facial challenges, and contravenes traditional standing principles").

Despite Fischer's argument to the contrary, § 231(a)(3) is not unconstitutionally overbroad because "the statute's potentially unconstitutional applications are few compared to its legitimate ones." *Mostofsky*, 2021 WL 6049891 at *8. The text shows that § 231(a)(3) covers "primarily, if not exclusively, conduct or unprotected speech, such as threats." Gov.'s Mot at 22. Section 231(a)(3), in other words, "applies to persons who commit or attempt to commit 'any act to obstruct, impede, or interfere' with law enforcement or firefighters. The words 'any act' imply that the statute is directed towards conduct, not speech." *United States v. Phomma*, No. 3:20-CR-

---

[2] The vagueness doctrine differs from the overbreadth doctrine in that "[a] vague law denies due process by imposing standards of conduct so indeterminate that it is impossible to ascertain just what will result in sanctions; in contrast, a law that is overbroad may be perfectly clear but impermissibly purport to penalize protected First Amendment activity." *Hastings v. Jud. Conf. of the U.S.*, 829 F.2d 91, 105 (D.C. Cir. 1987).

00465-JO, 2021 WL 4199961, at *5 (D. Or. Sept. 15, 2021). It should come as no surprise then that numerous "federal judges all within the last year" have rejected overbreadth challenges lodged against § 231(a)(3). *See McHugh*, 2022 WL 296304 at *17; *Nordean*, 2021 WL 6134595 at *17; *Mostofsky*, 2021 WL 6049891 at *8; *United States v. Howard*, No. 21-cr-28 (PP), 2021 WL 3856290, at *11–12 (E.D. Wis. Aug. 30, 2021); *United States v. Wood*, No. 20-cv-56 (MN), 2021 WL 3048448, at *8 (D. Del. July 20, 2021). This Court joins the ranks.

## COUNT THREE

Count Three of the Superseding Indictment charges Fischer with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2).

> On or about January 6, 2021, within the District of Columbia and elsewhere, **JOSEPH W. FISCHER**, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

18 U.S.C. § 1512(c) provides:

> Whoever corruptly –
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) Otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, . . . shall be fined . . . or imprisoned.

The Court recently concluded that the word "otherwise" links subsection (c)(1) with subsection (c)(2) in that subsection (c)(2) is best read as a catchall for the prohibitions delineated in subsection (c)(1). *United States v. Miller*, No. 21-cr-00119, Dkt. No. 72, slip op. at 28 (D.D.C. Mar. 7, 2022). As a result, for a defendant's conduct to fall within the ambit of subsection (c)(2),

7

the defendant must "have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." *Id.*

The Superseding Indictment does not allege that Fischer has taken any such action. Count Three of the Superseding Indictment alleges only that Fischer "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18." Nothing in Count Three (or the Superseding Indictment generally) alleges, let alone implies, that Fischer took some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence Congress's certification of the electoral vote. The Court will therefore grant Fischer's Motion to Dismiss Count Three.

## **COUNTS FOUR & FIVE**

Count Four of the Superseding Indictment charges Fischer with entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1).

> On or about January 6, 2021, within the District of Columbia and elsewhere, **JOSEPH W. FISCHER**, did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was temporarily visiting, without lawful authority to do so.

18 U.S.C. § 1752(a)(1) provides:

> (a) Whoever—
>
> (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so;
>
>    . . . shall be punished as provided in subsection (b).

Count Five of the Superseding Indictment charges Fischer with disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2).

> On or about January 6, 2021, within the District of Columbia and elsewhere, **JOSEPH W. FISCHER**, did knowingly and with intent to impede and disrupt the orderly conduct in and within such proximity to, a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions.

18 U.S.C. § 1752(a)(2) provides:

> (a) Whoever—
>
> (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;
>
> . . . shall be punished as provided in subsection (b).

For the purposes of both § 1752(a)(1) and § 1752(a)(2), 18 U.S.C. § 1752(c)(1)(B) defines "restricted building or grounds:"

> as a "posted, cordoned off, or otherwise restricted area . . . where the President or other person protected by the Secret Service *is or will be temporarily visiting*."

From the government's perspective, the Capitol qualified as "restricted building and grounds" on January 6 because it was a "building or grounds where the President or other person protected by the Secret Service is or will temporarily be visiting." 18 U.S.C. § 1752(c)(1)(B). *See* Gov.'s Br. at 48. According to the Superseding Indictment, then-Vice President Michael Pence counts as the "other person." But as Fischer sees it, then-Vice President Pence could not have been "temporarily visiting" the Capitol on January 6 because (1) he had a permanent office, in his capacity as President of the Senate, "within the United States Capitol and its grounds," and because (2) he presided over the Senate Chamber on January 6 to count the electoral votes in accordance

9

with the Electoral Count Act. *See* 3 U.S.C. § 15 ("Congress shall be in session on the sixth day of January succeeding every meeting of the electors. The Senate and House of Representatives shall meet in the hall of the House of Representatives at the hour of 1 o'clock in the afternoon on that day, and the *President of the Senate shall be their presiding officer*.") (emphasis added).

The Court held argument on Fischer's motion on February 28, 2022. At the argument, the government suggested a willingness to amend the Superseding Indictment to allege that one of then Vice President Pence's family members—who were not present at the Capitol in the capacities that then Vice President Pence was—attended the certification of the electoral vote at the Capitol on January 6. Indeed, the government stated the following in its brief in opposition to Fischer's motion to dismiss: "While not specifically alleged in the indictment, two other Secret Service protectees (members of the Vice President's immediate family), also came to the U.S. Capitol that day for a particular purpose: to observe these proceedings." Gov.'s Br. at 47. And Fischer's counsel essentially conceded during the argument that the motion to dismiss Counts Four and Five would be meritless if the government added the names of additional Secret Service protectees to the Superseding Indictment. As a result, the Court grants the government 14 days to either amend the Superseding Indictment or to explain to the Court why it will not do so.

\*   \*   \*

For the foregoing reasons, the Court will grant in part and deny in part Fischer's Motion to Dismiss, ECF No. 54. An appropriate order will follow.

DATE: March 15, 2022

_____
CARL J. NICHOLS
United States District Judge