**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | |
| **JOSEPH W. FISCHER,** | **CASE NO. 21-CR-234 (CJN)** |
| *Defendant*. | |

**GOVERNMENT'S RESPONSE TO MARCH 15, 2022 COURT ORDER REGARDING**
**COUNTS FOUR AND FIVE OF THE SUPERSEDING INDICTMENT**

On March 15, 2022, the Court ordered the government to "either amend the Superseding Indictment to allege that one of then Vice President Pence's family members attended the certification of the electoral vote at the Capitol on January 6 or to explain to the Court why it will not do so." ECF No. 65. The government respectfully submits that no further amendment of the superseding indictment is necessary. That is because, as four judges from this district have now concluded, the Vice President was temporarily visiting the Capitol that day. *See United States v. Puma*, 21-cr-454, 2022 WL 823079, at *16-*19 (D.D.C. Mar. 19, 2022) (Friedman, J.); *United States v. Andries*, 21-cr-93, 2022 WL 768684, at *16-*17 (D.D.C. Mar. 14, 2022) (Contreras, J.); *United States v. McHugh*, --- F.Supp.3d ---, 21-cr-453, 2022 WL 296304, at *20-*22 (D.D.C. Feb. 1, 2022) (Bates, J.); Minute Entry, *United States v. Griffin,* 21-cr-92 (D.D.C. Mar. 22, 2022) (McFadden, J.) (denying motion for judgment of acquittal arguing that Vice President was not temporarily visiting the Capitol on January 6, 2021). For the reasons stated below, as well as those set forth in the government's opposition to defendant's motion to dismiss (ECF No. 57 at 35-39) and at the February 28, 2022 hearing, the Court should deny the defendant's motion to dismiss Counts Four and Five of the Superseding Indictment.

I.      **The Plain Meaning of Section 1752 Covers the Vice President's January 6 Visit to the Capitol**

The Court's Memorandum Opinion notes the defendant's two arguments in support of his claim that Vice President Pence was not "temporarily visiting" the Capitol on January 6: the Vice President (1) "had a permanent office, in his capacity as President of the Senate, 'within the United States Capitol and its grounds,'" and (2) "presided over the Senate Chamber on January 6 to count the electoral votes in accordance with the Electoral Count Act."[1] ECF 64, at   Neither is persuasive.

To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).  The "ordinary meaning" of "temporarily visit" includes a trip to the office.  *Andries*, 2022 WL 768684, at *16 (it is "quite natural to say that a person 'temporarily visits' a place where she has an office.").

The term "temporary" means "[l]asting for a time only; existing or continuing for a limited time; transitory."  *Temporary*, Black's Law Dictionary (11th ed. 2019). The verb "visit" means, *inter alia,* "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee."  *See* https://www.merriam-webster.com/dictionary/visit.   Putting these definitions together, "someone is 'temporarily visiting' a location if they have gone there for a particular purpose, be it 'business, pleasure, or sight-seeing,' and for a limited time, which could be 'brief' or 'extended' while nonetheless remaining 'temporary.'" *McHugh*, 2022 WL 296304, at *20.  People commonly go to their offices for one particular purpose (business), and for a limited time, often returning home at the end of the

---

[1]     Vice President Pence in fact presided over the Joint Session of Congress, which was held in the Chamber of the House of Representatives on January 6, not in the Senate Chamber.  *See* 3 U.S.C. § 15.  He then moved to preside over the Senate after the Houses withdrew to consider an objection to Arizona's Electoral College certificate.

day.   They may return the following day, but there is no reason why one cannot repeatedly "temporarily visit" the same location.   One can "temporarily visit" a place where one has an office.

Second, simply because Vice President Pence presided over the Senate Chamber on January 6 to count the electoral votes does not mean he could not "temporarily visit" the Capitol to accomplish that task.   The President or Vice President frequently "temporarily visit" various locations for work-related purposes, as they fulfill various official duties.   "[O]ne can "visit" a location for the business purpose of working and meeting there."   *Andries,* 2022 WL 786684, at *16.   As a definitional matter, part of what it means to "temporarily visit" a location is to go there "for a particular purpose"; in this case, the Certification of the Electoral College vote.   *McHugh*, 2022 WL 296304, at *20.   The definitions of "visit" do not include a limitation "based on a trip's purpose," and including such a limitation "flies in the face of the ordinary usage" of the ordinary words.   *Id.* at *21.   Under defendant's logic, someone who travels for a business trip, including an appellate judge traveling out of town to hear an oral argument, would not be "temporarily visiting," even though describing such conduct as a temporary visit "would be perfectly natural."   *Id.*; *accord Andries*, 2022 WL 768684, at *16.   That fact that Vice President Pence traveled to the Capitol for a particular purpose on January 6 in fact *strengthens* the argument that he "temporarily visited" there.

Under the plain language of Section 1752, then, the Vice President "was temporarily visiting the Capitol on January 6, 2021: he was there for a limited time only in order to preside over and participate in the Electoral College vote certification."   *Puma*, 2022 WL 823079, at*17; *accord McHugh*, 2022 WL 296304, at *21 ("[T]he Vice President went to the Capitol for a particular purpose—in this case, an official business purpose—and stayed there for only a brief time; his sojourn at the Capitol was 'for a period relatively short' and set to 'terminate upon the

occurrence of an event having a reasonable possibility of occurring within a short period of time,' namely the completion of the certification vote."); *Andries,* 2022 WL 786684, at \*16 ("Vice President Pence was 'temporarily visiting' the Capitol on January 6, 2021 if he went to the Capitol for a particular purpose, including a business purpose, and for a limited time only.  Plainly he did. He went to the Capitol for the business purpose of carrying out his constitutionally assigned role in the electoral count proceeding; he intended to and did stay there only for a limited time."). Defendant's argument is contrary to this "commonsense conclusion." *McHugh*, 2022 WL 296304, at \*21.  His conduct accordingly falls within Section 1752's plain sweep because he unlawfully entered a restricted area while the Vice President was "temporarily visiting" that area.[2]

Moreover, even if it were "'awkward . . . to describe an ordinary commute from home to one's regular workplace as 'temporarily visiting' the office,' this case does not present such a situation." *Andries*, 2022 WL 768684, at \*17 (quoting *McHugh*, 2022 WL 296304, at \*22).  The Capitol "is not the Vice President's regular workplace, nor was Vice President Pence's trip to the Capitol on January 6, 2021 analogous to a regular commute to the office." *McHugh*, 2022 WL 296304, at \*22.  At trial, the government could offer evidence that Vice President Pence had four offices within the District of Columbia: an executive office in the West Wing of the White House, a legislative office in the Dirksen Senate Office Building and ceremonial offices for functions related to his role in each branch.  *See* Congressional Directory of the 116th Congress (2019 –

---

[2] In the alternative, Judge Friedman proposed another "sensible interpretation" of Section 1752 that avoids having to define the term "temporarily visiting."  *See Puma*, 2022 WL 823079, at\*18. Under that reading, Section 1752(c)(1)(B) applies to either (1) anywhere "where the President or other person protected by Secret Service is" or (2) anywhere "where the President or other person protected by the Secret Service . . . will be temporarily visiting."  18 U.S.C. § 1752(c)(1)(B) (emphasis added).  Even if the Court found that Vice President could not "temporarily visit" the Capitol on January 6, he "was" present there.  As described below, that interpretation is also consistent with the statute's context and legislative history.

2020), *Officers and Officials of the Senate* at 397 (February 12, 2016) (available at https://www.govinfo.gov/app/collection/cdir/cdir_114/2016-02-12/F1); "The Vice President's Residence & Office" (available at https://www.whitehouse.gov/about-the-white-house/the-grounds/the-vice-presidents-residence-office/).  Senate 212, the office set aside in the Capitol Building for the Vice President, is known as a "ceremonial office," and testimony would show that Vice President Pence visited this office at the Capitol only a handful of times during his four-year tenure.  Calling this a "permanent office," as the defendant suggests, is thus "more than a little misleading." *McHugh,* 2022 WL 296304, at *22; *see also United States v. Andries*, 2022 WL 768684, at *17 ("Like a President who maintains an office at his home-state residence, and like the CEO who maintains a reserve office at her firm's satellite location, Vice President Pence held an office at the Capitol, but did not use that office as his primary, regular workspace.").  Additionally, trial evidence would also show that the Secret Service considered the Vice President's trip to the Capitol on January 6 a "visit" by a Head of State.  *See* Secret Service Head of State Worksheet (Redacted), attached as Exhibit A.[3]

## II.   Statutory Context and Legislative History Support Reading Section 1752 to Include the Vice President's Visit to the Capitol on January 6, 2021

Here, the defendant's interpretation of "temporarily visit"—which urges the Court to carve out an exception for a protectee performing an official duty in a building where he or she has an

---

[3] The identification of the specific Secret Service protectee is not an element of a Section 1752(a) violation; rather, it is evidence that the government would introduce at trial to prove an element, namely, that the area in question was a "restricted building or grounds."  An indictment alleging a violation of Section 1752 need not designate a specific protectee to withstand a motion to dismiss. *See United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018) (indictment sufficient where it tracks "the statutory language and specif[ies] the time and place of the offense," thus providing a defendant "fair notice of the charge against which he would need to defend himself").

office[4]— "is not supported by the statutory text and is out of step with the statutory context." *Puma*, 2022 WL 823079, at *17.  Sections 1752 and 3056, which is cited in Section 1752(c)(2), are principally designed to protect certain high-level Executive Branch officials and their families. Section 1752 aims to deter attacks on these protectees by criminalizing attacks on these individuals either in their official residences, *see* 18 U.S.C. § 1752(c)(1)(A), in any "restricted building or grounds" where they are or will be temporarily visiting, 18 U.S.C. § 1752(c)(1)(B), or in any "restricted building or grounds" that is restricted for a "special event of national significance,"[5] 18 U.S.C. § 1752(c)(1)(C).  The defendant's narrowed interpretation of the "temporarily visiting" prong would protect a protectee for brief visits—but not work trips—outside of Washington, D.C., but not at "any location in Washington, D.C. (other than an official residence) where the protectee maintains an office." *Puma*, 2022 WL 823079, at*17.  Such an interpretation would "leave an arbitrary gap in the application of the law." *Id.*[6] "The much more sensible reading is that

---

[4]     To the extent that defendant's motion to dismiss suggests that a protectee must travel outside of Washington, D.C. to "temporarily visit a location," *see* ECF No. 54 at 30, defense counsel's concession that members of the Vice President's family, who live in Washington, D.C., can "temporarily visit" the Capitol (as noted in the Court's Memorandum Opinion, ECF No. 64 at 10), now indicates agreement that a protectee can temporarily visit locations within Washington, D.C.

[5]     Although the Presidential Inauguration was designated as a "special event of national significance," the Certification proceeding on January 6, 2021, was not. *See* Congressional Research Service, *National Special Security Events: Fact Sheet* (Jan. 11, 2021), available at https://sgp.fas.org/crs/homesec/R43522.pdf.

[6]     At oral argument, the Court noted that the Secret Service could continue to protect a Vice President wherever he or she goes, regardless of whether Section 1752 applies.  But deterring particular behavior through the criminal law is one mechanism by which the Vice President is protected.  By analogy, were the Court to declare inapplicable 18 U.S.C. § 871, which criminalizes threatening the life of the Vice President (and others), the Secret Service could still protect the Vice President, but the additional deterrence provided by that criminal statute would be gone, reducing one safeguard that discourages dangerous behavior.

subsection (c)(1)(B) applies to those areas not covered by subsections (c)(1)(A) and (c)(1)(C) where a Secret Service protectee may nonetheless face security risks." *Id.* at *18.

While the Court need not resort to legislative history to find that Vice President Pence was temporarily visiting the Capitol on January 6, the government's straightforward reading of Section 1752's context and purpose finds support in its legislative history. That history explains that Section 1752 "was designed to remedy the fact that 'there is, at the present time, no Federal statute which specifically authorizes [the Secret Service] to restrict entry to areas where the President maintains temporary residences *or offices*.'" *Andries*, 2022 WL 768684, at *17 (citing S. Rep. No. 91-1252 at 7S. Rep. No. 91-1252 at 7 (1970) (emphasis added). Indeed, Congress recognized that the Secret Service's "protective mission" encompasses "securing the buildings and grounds where those protected *work or visit*." 112 Cong. Rec. H1,373 (daily ed. Feb. 28, 2011) (emphasis added); *see Puma*, 2022 WL 823079, at*17 (noting that the relevant legislative history "suggests that Congress intended Section 1752 to apply broadly and comprehensively, reinforcing the security of Secret Service protectees at a number of locations").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the defendant's motion to dismiss Counts Four and Five of the Superseding Indictment.

Dated: March 29, 2022

Respectfully Submitted,
MATTHEW M. GRAVES
United States Attorney

By:      /s/
Alexis J. Loeb
CA Bar No. 269895
Assistant United States Attorney
Detailee
450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
Alexis.Loeb@usdoj.gov
(415) 436-7168